Kristopher P. Badame, Esq. SBN: 210349
Joseph H. Hunter, Esq. SBN: 137796
Michele E. Pillette, Esq., SBN: 262031
**BADAME & ASSOCIATES, APC**
25432 Trabuco Road, Suite 207
Lake Forest, CA  92630
(949) 770-2867
(866) 230-3044 – FAX
kbadame@badameandassociates.com
jhunter@badameandassociates.com

Attorneys for PLAINTIFFS, and all those similarly situated

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CORDAS, individually, and on behalf of all those similarly situated, | Case No.: |
| Plaintiffs, | **PLAINTIFFS' CLASS ACTION COMPLAINT FOR:** |
| vs. | 1. **UNFAIR OR UNLAWFUL BUSINESS PRACTICES PURSUANT TO BUS. & PROF. CODE SECTION 17200 ET SEQ.;** |
| UBER TECHNOLOGIES, INC., and DOES 1 through 50, inclusive, | 2. **VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW PURSUANT TO BUS. & PROF. CODE SECTION 17500 ET SEQ.;** |
| Defendants. | 3. **BREACH OF CONTRACT;** |
| | 4. **FRAUD/PROMISE WITHOUT INTENT TO PERFORM** |
| | 5. **FRAUDULENT CONCEALMENT;** |
| | 6. **INTENTIONAL MISREPRESENTATION;** |
| | 7. **NEGLIGENT MISREPRESENTATION;** |
| | 8. **BREACH OF COVENANT OF FAIR DEALING;** |
| | 9. **WILLFUL MISCONDUCT;** |
| | 10. **UNJUST ENRICHMENT** |
| | **JURY TRIAL DEMANDED** |

1

*Cordas vs. Uber Technologies, Inc.*
**Class Action Complaint for Damages**

# I.  **JURISDICTION & VENUE**

1.      This Court has diversity jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §1332, because the matter in controversy exceeds $75,000, exclusive of interests and costs, Lead Plaintiff is a California Resident and United States Citizen. All remaining PLAINTIFFS are current and/or former California Residents, United States Citizens and/or legal residents, and Defendant is a California corporation with its principal place of business in San Francisco, California. In addition, the action is brought as a class action pursuant to *Federal Rules of Civil Procedure*, Rule 23 and 28 U.S.C. §1332 (d), the *Class Action Fairness Act*, on behalf of a class that exceeds 100 people, that involves more than $5,000,000 in controversy, and where the citizenship of at least one member of the class is diverse from that of Defendants.

2.      Plaintiff MICHAEL CORDAS, individually, and in a representative capacity and on behalf of all other similarly situated persons (hereinafter collectively referred to and referenced as "PLAINTIFF" or "PLAINTIFFS") who were damaged by Defendant UBER TECHNOLOGIES, INC., and DOES 1 through 50's (hereinafter collectively known, referenced and referred to as "UBER" or "DEFENDANTS") deceptive and misleading business practices in violation of California *Business & Professions Code* Sections 17200 et seq. and 17500, breach of contract, fraud without the intent to perform, fraudulent concealment, intentional misrepresentations, negligent misrepresentations, breach of covenants of good faith and fair dealing, willful misconduct, and unjust enrichment, make the allegations contained herein.

3.      Specifically, lead PLAINTIFF MICHAEL CORDAS is a Resident of the State of California and a Citizen of the United States.  All remaining PLAINTIFFS are current and/or former California Citizens, United States citizens and/or legal residents and customers of Defendant UBER TECHNOLOGIES, INC., and DOES 1 through 50.

4.      Defendant UBER is a publicly held company incorporated under the laws of the State of Delaware.  Defendant UBER'S headquarters and principal place of business is San Francisco, California.

5.      Defendant UBER is a company organized and existing under the laws of the State of California, with a corporate entity identification number of C3318029.  Furthermore,

2

*Cordas vs. Uber Technologies, Inc.*
**Class Action Complaint for Damages**

Defendant UBER is doing business in counties throughout California, including Alameda County.

6.     PLAINTIFFS lack sufficient information and belief to allege the true names and capacities of defendants sued herein as DOES 1 through 50, inclusive.  For that reason, PLAINTIFFS sue said fictitiously named defendants by such fictitious names.  When the true names, nature and capacity of said fictitiously named defendants are ascertained, PLAINTIFFS shall amend this Complaint accordingly.  At all times herein mentioned, all DEFENDANTS herein, whether named or unnamed were and are responsible and liable to PLAINTIFFS for all of the PLAINTIFFS' damages and other relief prayed for herein.  PLAINTIFFS allege on information and belief that at all times herein mentioned, each of the defendants herein, whether named or unnamed, was the agent, servant employee, co-conspirator, co-adventurer, and employee of each other defendant herein, whether named or unnamed.  With respect to each action and inaction pled in the following paragraphs, each of the defendants, whether named or unnamed, was acting within the course and scope of their agency and employment and was acting with the full knowledge, consent, ratification and approval of each other defendant herein, whether named or unnamed.

7.     Venue is proper in this Court and judicial district under 28 *U.S.C.* §1391 because DEFENDANTS' (i) conduct and conducted substantial business within this judicial district and maintain offices in this judicial district, (ii) the causes of action alleged herein arose in whole or in part in this judicial district, and (iii) DEFENDANTS committed wrongful conduct against members of the class in this district.

## II.   INTRODUCTION

8.     This is a civil class action filed by lead plaintiff Michael Cordas against Defendant UBER, for its deceptive and misleading business practices in violation of California *Business & Professions Code* Sections 17200 et seq. and 17500, breach of contract, fraud without the intent to perform, fraudulent concealment, intentional misrepresentations, negligent misrepresentations, breach of covenants of good faith and fair dealing, willful misconduct, and

3

*Cordas vs. Uber Technologies, Inc.*
**Class Action Complaint for Damages**

unjust enrichment, as described in the allegations below related to the solicitation of clients for its ride-sharing technology platform and vehicle transportation network and that UBER's deceit continues to this very day up to the filing of this instant action.

9.      Each of the allegations regarding Defendants contained herein applies to instances in which the Defendants engaged in the unlawful, intentional, fraudulent, deceptive conduct alleged.

### III.   THE HISTORY AND EMERGENCE OF UBER TRANSPORTATION COMPANY, INC.

10.      UBER is an "on-demand" car service that allows you to request private drivers through applications for iPhone, Android, and other similar devices. The service utilizes dispatch software to send the nearest driver to your location. The service provides a cashless solution that charges the ride directly to the user's credit card on file.

11.      A mobile phone user must download the UBER application software and will then be asked to create an account (an account can also be created via a computer). The UBER software then records the user's name, mobile number, email, language, and billing information. Most importantly, UBER records a user's credit card or PayPal account to use the UBER service.

12.      UBER offers up to five types of vehicle services depending on the city and country that the user is located in.   The user selects vehicle type at the bottom of the UBER app to set a vehicle preference. The five types of Defendants' services available are as follows:

(i)      BLACK CAR – This is UBER's original service. Choosing Black Car will send a high-end sedan to the user's location, with seating for up to 4 people.

(ii)      TAXI – This calls a taxi that has an agreement with UBER. These taxis are much like any normal taxi, except that the UBER user can pay through the app.

(iii)      UBERX – This sends an everyday car to the user's location with seating for up to four people. This is UBER's budget option.

(iv)      SUV – This will send an SUV to user's location with seating for up to 6 people. This is significantly more expensive than the Black Car service.

(v)      LUX – This will send a high-end luxury car to user's location with seating for up to four people. This is UBER's most expensive service.

13.      Once the UBER app software user has chosen a vehicle type, the software attempts to mark the user's position on the UBER app software generated map with a pin. This pin represents where the driver will be expecting to pick the UBER user up. The UBER user can also manually type in the pickup location. Once the UBER user's location is set, the user taps the "Set Pickup Location" button.

14.      The same user interaction is used to set the UBER user's ride destination.  Once again, the UBER user can manually enter the destination address or search for a business, landmark, airport, etc. to lookup the exact address to set.

15.      The UBER software user will then be given a time estimate as to how long the UBER directed car will take to show up.

16.      The UBER software will then quote to the UBER user an estimate based on time, distance and other proprietary algorithmic calculations to reach the desired location, and finally a fee for the UBER charge to transport based on the requests made above through the UBER software app.

17.      When this estimated quote is accepted by the UBER software user, the UBER software will provide the user with the name, car type and phone number of the UBER driver that has been dispatched for pick up to the user's specified location.

18.      The entire UBER process is entirely cashless. All fare payments are handled automatically by the UBER service and the user's credit card or payment method on file.

## IV.      BACKGROUND REGULATION OF THE TRANSPORTATION NETWORK COMPANIES SUCH AS UBER TECHNOLOGIES INC., ETC.

19.      The State of California Public Utilities Commission's Safety and Enforcement Division (hereinafter referred to as "PUC") issued cease and desist letters and $20,000 citations against "NEW ONLINE ENABLED TRANSPORTATION SERVICES" (subsequently renamed by the PUC as "TRANSPORTATION NETWORK COMPANIES" hereinafter referred to as "TNC") Uber, Lyft, and

SideCar for operating without authority and other violations of state law.  However, in 2013, the Safety and Enforcement Division entered into settlement agreements intended to ensure the public safety of both riders and drivers with Uber, Lyft, and SideCar, allowing the companies to operate while the Commission's TNC rulemaking is underway.

20.     On September 19, 2013, the PUC published its "*Decision adopting Rules & Regulations to Protect Public Safety While Allowing New Entrants to the Transportation Industry*".

21.     "The PUC Commission defines a TNC as an organization whether a corporation, partnership, sole proprietor, or other form, operating in California that provides prearranged transportation services for compensation using an online-enabled application (app) or platform to connect passengers with drivers using their personal vehicles."

22.     The PUC decision adopted rules that "require each TNC (not the individual drivers) to obtain a permit from the California Public Utilities Commission (Commission), require criminal background checks for each driver, establish a driver training program, implement a zero-tolerance policy on drugs and alcohol, and require insurance coverage as detailed below."

23.     Lastly, the PUC decision states as follows: "Parties have raised a number of concerns regarding the Terms & Conditions used by certain TNCs, which include general disclaimers of liability. This decision clarifies that no Term & Condition in a TNC's Terms of Service or elsewhere, can be inconsistent with this decision, or be used or relied on by the TNC to deny insurance coverage, or otherwise evade the insurance requirements established in this decision.  Moreover, the Terms of Service does not absolve the TNC of its responsibilities to comply with the stated regulations in this decision to ensure safety of the public.  As stated earlier in this decision, the Commission will open a Phase II to consider updating its regulations over TCP certificate holders.  Phase II will also consider the standard and appropriate language for Terms & Conditions for both TCP and TNC certificate holders."

## V.   FACTUAL BACKGROUND FOR ALL CLASS CLAIMS

24.     On or about July 5, 2015 Plaintiff Michael Cordas downloaded the mobile software application and enrolled in the UBER service.

25.     On or about July 28, 2015 in midtown New York, New York, Plaintiff Mr. Cordas requested an UBER ride service in front of the Grand Hyatt Hotel located at 109 East 42nd Street, New York, NY 10017.

26.     Mr. Cordas designated his pickup location, UBER provided the estimated time of arrival, and he then waited diligently for his UBER Ride identified.

27.     When the UBER rides service did not appear within 10 minutes of the estimated time of arrival, Mr. Cordas attempted to call the UBER driver identified with the information provided by the UBER mobile application.

28.     When connected to the number provided, Mr. Cordas listened to a recording stating that the number dialed was a non-working number.

29.     Subsequently, as the UBER rides service did not appear within 10 minutes of the estimated time of arrival, Mr. Cordas attempted to text the UBER driver identified with the information provided by the UBER mobile application.

30.     A message texted Mr. Cordas back stating that the number provided was a non-working number and the text did not go through.

31.     Within a few more minutes, the UBER mobile application notified Mr. Cordas that he had been charged $10.00 because he had cancelled his UBER request.

32.     At no point in time did Mr. Cordas communicate to anyone at UBER or perform any command or function on the UBER mobile application stating that he wanted to cancel his UBER ride request.

33.     On or about February 1, 2016, Mr. Cordas at Toronto, Ontario, Canada, Plaintiff Mr. Cordas requested an UBER ride service in front of the arriving airport terminal.

34.     Mr. Cordas designated his pickup location, UBER provided the estimated time of arrival, and he then waited diligently for his UBER Ride identified.

35.     When the UBER rides service did not appear within 10 minutes of the estimated time of arrival, Mr. Cordas attempted to call the UBER driver identified with the information provided by the UBER mobile application.

36.     When connected to the number provided, Mr. Cordas listened to a recording stating that the number dialed was a non-working number.

37.     Subsequently, as the UBER rides service did not appear within 10 minutes of the estimated time of arrival, Mr. Cordas attempted to text the UBER driver identified with the information provided by the UBER mobile application.

38.     A message texted Mr. Cordas back stating that the number provided was a non-working number and the text did not go through.

39.     Within a few more minutes, the UBER mobile application notified Mr. Cordas that he had been charged CA$5.00 (Canadian Currency) because he had cancelled his UBER request.

40.     At no point in time did Mr. Cordas communicate to anyone at UBER or perform any command or function on the UBER mobile application stating that he wanted to cancel his UBER ride request.

41.     Further, the UBER driver proceeded to book Mr. Cordas' UBER fare to return to downtown Toronto, fraudulently charging Mr. Cordas CA$27.92 (Canadian Currency) for services not performed.

42.     On or about May 21, 2016 in Irvine, CA, Plaintiff Mr. Cordas requested an UBER ride service near the University of California at Irvine on Campus Drive.

43.     Mr. Cordas designated his pickup location, UBER provided the estimated time of arrival, and he then waited diligently for his UBER Ride identified.

44.     When the UBER rides service did not appear within 10 minutes of the estimated time of arrival, Mr. Cordas attempted to call the UBER driver identified with the information provided by the UBER mobile application.

45.     When connected to the number provided, Mr. Cordas listened to a recording stating that the number dialed was a non-working number.

46.     Subsequently, as the UBER rides service did not appear within 10 minutes of the estimated time of arrival, Mr. Cordas attempted to text the UBER driver identified with the information provided by the UBER mobile application.

47.     A message texted Mr. Cordas back stating that the number provided was a non-working number and the text did not go through.

48.     Within a few more minutes, the UBER mobile application notified Mr. Cordas and sent an email at 9:59PM Pacific Time that he had been charged $5.00 because he had cancelled his UBER request.

49.     At no point in time did Mr. Cordas communicate to anyone at UBER or perform any command or function on the UBER mobile application stating that he wanted to cancel his UBER ride request.

50.     The same UBER driver then appeared within minutes stating that there had been an error and provided the ride service. The deceptive and fraudulent cancellation fee by UBER for $5.00 was never reversed.

51.     The nexus of this instant action is Defendant UBER'S deceptive, false, misleading and illusory business policies and practices that were designed and created to dissemble and deflect their unsuspecting consumers for UBER'S true purpose – to generate millions of dollars based on their fraudulent, unearned and unconscionable "Cancellation Fees" that are pure bottom-line profit to the company.

52.     It is the Plaintiffs' contention that Defendant UBER'S entire business and technology platform is primarily designed to generate profit with unlawful "Cancellation Fees". Specifically, Plaintiff contends that the UBER'S algorithmic software is intentionally designed to charge a cancellation fee regardless of circumstances to the customer/driver.  These cancellation fees are then automatically and unilaterally charged to the customer's account and debited from the customer's payment method on file.  These counterfeit cancellation fees remain on the consumer's account until the user challenges the fraudulent fee (a majority of the time, this fee goes unnoticed/unchallenged), thereby allowing UBER to benefit and capitalize on a service (or lack thereof) that they never performed, nor had any intention of ever performing.  Thus, UBER is truly not an innovative Transportation Network Company, but rather a disingenuous, deceptive scheme focused on the pursuit of defrauding its users (who are all members of the general public) into paying unearned, unconscionable cancellation fees.

53.     Plaintiff Cordas and many so similarly situated, have been deceptively, fraudulently, and intentionally/negligently enticed into using "UBER's ride sharing mobile application and service enrollment upon the false promise that UBER will deliver cost effective and efficient ride sharing services.

54.     UBER's ride service is incidental and secondary to their primary focus of intentionally and deliberately racking up millions of dollars of fraudulent cancellation fees.

55.     Defendant UBER'S "cancellation-fee" policy is a ruse and completely illusory as advertised.  The illusive and omitting cancellation fee policy states that if a user cancels their respective ride request within 10 minutes of the UBER provided estimated time of arrival, they will be charged a cancellation fee.  In addition, the User will also be charged a cancellation fee if they are not present when the driver shows up.  However, at no point in time is the UBER user ever made aware that they will be charged a cancellation fee for no fault of their own, and then be required to take affirmative action to reverse the charge after it is already taken from their payment account.  Specifically, when the driver doesn't show up as requested, and the estimated time of arrival is outside of the 10 minute mark, the UBER user is **automatically** assessed a cancellation fee despite the fact that they were waiting at the prescribed location as contracted for.  The UBER user is then forced to contact UBER and request a refund as their money has already been taken by UBER and they now have to wait for reimbursement accordingly.  It is intentionally telling that this fraudulent policy is omitted from the stated cancellation fee policy (This type of policy, or lack thereof, also promotes and is a derivative to, other fraudulent activity, such as "ghosting" stops in order to maximize UBER and driver profits).  If these intentional misrepresentations, fraudulent concealments, and deceptive business policies, practices and procedures were known to the public, then Defendant UBER'S windfall of revenue would not exist.  If customers were properly informed, as opposed to constructively and/or intentionally misled, they would NOT enroll in UBER'S services and would not subject themselves to UBER'S cancellation fee billing bonanza.

56.     These intentional/negligent, fraudulent, deceptive and misleading policies, procedures, and practices of Defendant UBER allow them to increase revenues at the expense of the general public and their competitors.

57.     This action is brought as a representative class action to recover for ALL damages owed to PLAINTIFFS by Defendant UBER, and DOES 1 through 50, as well as their subsidiaries, predecessors and affiliated companies ("DEFENDANTS" or "UBER"), based on Defendant UBER'S fraudulent, intentional/negligent, deceptive, and misleading, policies, practices, and procedures, which clearly establishes Defendant UBER'S liability for violations of California *Business & Professions Code* Sections 17200 et seq. and 17500, breach of contract, fraud without the intent to perform, fraudulent concealment, intentional misrepresentations, negligent misrepresentations, breach of covenants of good faith and fair dealing, willful misconduct, and unjust enrichment.

58.     Plaintiff Michael Cordas (hereinafter collectively referred to as "PLAINTIFFS") brings this collective and class action individually, and in a representative capacity and on behalf of all other similarly situated current and former, customers of Defendant UBER within the United States and State of California, who have enrolled in UBER'S mobile application and ride service that have been subjected to fraudulent and false cancellation fees.

59.     Defendant UBER'S actions, as detailed above, were part of a statewide and/or nationwide corporate plan and scheme, which affected all customers who enrolled in UBER'S mobile application and ride service.   As a direct and proximate result of UBER'S illegal, company-wide plan, practice and scheme, each of the PLAINTIFFS were:  (1) deceived into downloading UBER'S mobile application software; (2) enticed into linking either a credit card, bank account or other payment mode or method to the UBER enrollment software service; (3) fraudulently, intentionally and negligently charged for illusory cancellation fees; and finally, (4) victimized by UBER'S policies and practices set forth herein.  PLAINTIFFS are entitled to recover all fees paid to Defendant UBER, and DOES 1 through 50, for breach of contract, fraud without the intent to perform, intentional misrepresentations, negligent misrepresentations, breach of covenants of good faith and fair dealing, as well as violations *California Business &*

11

*Cordas vs. Uber Technologies, Inc.*
**Class Action Complaint for Damages**

*Professions Code* sections 17200-17208 ("UCL"), civil penalties, punitive damages, attorneys' fees and costs, and interest as authorized by law.

60.     PLAINTIFFS respectfully request that the Court order notice to all similarly situated current and former customers of Defendant UBER within the State of California and the United States, who have been subjected to UBER'S fraudulent and negligent billing of cancellation fess from the time period of four (4) years prior to filing of the Complaint to present, informing them of the pendency of this action.  PLAINTIFFS will also seek class certification pursuant to *Federal Rules of Civil Procedure*, Rule 23, with Court approved notice.

61.     PLAINTIFFS allege, upon information and belief, that Defendant UBER, a California corporation is, at all times referenced herein, a corporation and/or other business entity organized and existing under the laws of the State of California.

62.     PLAINTIFFS are/were customers of Defendant UBER in the State of California and/or the United States during the applicable statute of limitations period.  PLAINTIFFS are/were customers of Defendant UBER and/or its affiliates and PLAINTIFFS set forth the identity of such DEFENDANTS by virtue of Defendant UBER'S corporate documents and other documents.

63.     The true names and capacities of Defendants, DOES 1 through 50, inclusive, are presently unknown to PLAINTIFFS, who therefore sue said Defendants by such fictitious names.  PLAINTIFFS will seek leave of court to amend this Complaint to insert the true names and capacities of said fictitiously named Defendants when the same have been ascertained.

64.     PLAINTIFFS allege that Defendant UBER and DOES 1 through 50, inclusive, acted together in committing the violations of the California *Business and Professions Code sections 17200, 17500, et seq.*, and other laws/regulations alleged herein.

65.     PLAINTIFFS are informed and believe, and thereon allege, that each of the Defendant DOES designated herein is contractually, vicariously, or legally responsible in some manner for the events and happenings hereinafter alleged, either through said Defendant DOES' own conduct or through the conduct of its agents, servants, consultants, joint ventures and employees, and each of them, or in some other manner.

66.     PLAINTIFFS are informed and believe, and thereon allege, that at all relevant times herein mentioned, each of the DEFENDANTS was the agent, representative, principal, servant, employee, partner, alter ego, joint venture, successor-in-interest, assistant and/or consultant of each and every remaining DEFENDANT, and as such, was at all times acting within the course, scope, purpose and authority of said agency, partnership and/or employment, and with the express or implied knowledge, permission, authority, approval, ratification, and consent of the remaining DEFENDANTS, and each DEFENDANT was responsible for the acts, alleged herein, and all DEFENDANTS herein were also negligent and reckless in the selection, hiring and supervision of each and every other DEFENDANT as an agent, representative, principal, servant, employee, partner, alter ego, joint venture, successor-in-interest, assistant and/or consultant.

## VI.   CLASS IDENTIFICATION

67.     **DEFINITION OF CLASS** – Pursuant to *Federal Rules of Civil Procedure*, Rules 23, PLAINTIFF brings this suit as a class action on behalf of the proposed Class and Subclass as follows:

### CLASS

All current and former customers of Defendant UBER within the United States who, within the Liability Period, enrolled in UBER's mobile application and ride service that have been subjected to cancellation fees from Defendant UBER.

### SUBCLASS

All current and former customers of Defendant UBER within the State of California who, within the Liability Period, enrolled in UBER's mobile application and ride service that have been subjected to cancellation fees from Defendant UBER.

68.     PLAINTIFF seeks class certification pursuant to *Federal Rules of Civil Procedure*, Rules 23(a) and 23(b) (3), unfair competition law, as well other as case and statutory law, on behalf of himself and the Class members as identified above herein.

## VII.   *FEDERAL RULES OF CIVIL PROCEDURE RULE* 23 CLASS ACTION REQUIREMENTS

69.     **NUMEROSITY** - Based on information and belief, the members of the putative class greatly exceeds 10,000 persons. This number may increase, depending upon the information obtained from Defendant UBER over the applicable statutory period prior to the filing of this Complaint.

70.     **COMMONALITY** - There are questions of law and fact common to the class which predominate over any questions affecting only individual members of the class including, but not limited to, the following: Common questions of fact and law exist as to all class and subclass members and predominate over any questions that affect only individual class members. The conduct at issue in this case affected all current and former customers of Defendant UBER (as identified in the proposed class and subclass herein) who, within the Liability Period, enrolled in UBER'S mobile application and ride service that have been subjected to fraudulent and false cancellation fees from Defendant UBER.  Specifically, common questions include, but are not limited to:

a.      Whether Defendant UBER violated *California Business & Professions Code* section 17200 et seq., with its false, deceptive, fraudulent, and misleading business practices;

b.      Whether Defendant UBER violated *California Business & Professions Code* section 17500 et seq., with its false, deceptive, fraudulent, and misleading business advertising practices;

c.      Whether Defendant UBER fraudulently concealed, omitted, and or failed to disclose material facts;

d.      Whether Defendant UBER intentionally misrepresented material facts to a substantial segment of its audience;

e.      Whether Defendant UBER negligently misrepresented material facts to a substantial segment of its audience;

f.      Whether Defendant UBER breached the covenant of good faith and fair dealing to a substantial segment of its audience;

g.      Whether Defendant UBER has been unjustly enriched through its false, intentional, deceptive, fraudulent, and misleading business practices;

h.      Whether members of the Class are entitled to actual damages, entry of final judgment and injunctive relief compelling Defendant UBER to cease its fraudulent and deceptive business practices;

i.      Whether Defendant UBER deliberately misrepresented or failed to disclose material facts to Plaintiff and the Class; and

j.      Whether Defendant UBER'S conduct constitutes an unconscionable business practice.

71.      **TYPICALITY** - The claims of the Named PLAINTIFF is typical of the claims of the class members.  The Named PLAINTIFF was subject to the same violations of applicable rights under federal and state, case and statutory law, including but not limited to unfair competition laws and seek the same type of damages, restitution, and other relief on the same theories and legal grounds as those of the class members they seek to represent.

72.      **ADEQUACY OF REPRESENTATION** – Pursuant to *Federal Rules of Civil Procedure* Rule 23 (a)(4), Members of a class may sue as representatives on behalf of the class only if they "will fairly and adequately protect the interests of the class".  The Representative PLAINTIFF in the case at bar will fairly and adequately represent and protect the interests of the Class members, as he has intricate knowledge of Defendant UBER'S wrongdoings, have suffered injury himself, and will prosecute the action vigorously on behalf of the class.  PLAINTIFFS' Counsel are competent and experienced in litigating consumer class actions, complex litigation matters, employment class actions, and other class actions involving violations of the unfair competition law similar to the present claims.

73.   **SUPERIORITY** - This class action is superior to other available means for the fair and efficient adjudication of the claims of the Class Members.  It would be virtually impossible for the Class Members to individually obtain redress for the wrongs done to them.  Even if the individual Class Members could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contrary judgments.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

74.   Class certification is appropriate under *Federal Rules of Civil Procedure, Rule* 23(b)(3) because questions of law and fact common to the class members predominate over any questions affecting only individual class members.  Each class member has been damaged and is entitled to recovery by reason of Defendant UBER'S fraudulent, intentional/negligent, unfair, deceptive, and misleading business policies and practices as alleged herein.

## VIII.   FIRST CAUSE OF ACTION FOR UNFAIR OR UNLAWFUL BUSINESS PRACTICES   PURSUANT TO CALIFORNIA *BUSINESS & PROFESSIONS CODE* SECTION 17200 ET SEQ.
### (On Behalf of the Subclass)

75.   As a FIRST, separate, and distinct cause of action, PLAINTIFFS complain against Defendant UBER and DOES 1 through 50, inclusive, and re-allege all the allegations contained in this Complaint and incorporates them by reference into this cause of action as though fully set forth herein.

76.   California *Business & Professions Code* Section 17200, et seq., prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice . . ." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

77.   As stated herein, UBER is an "on-demand" car service that allows you to request private drivers through applications for iPhone, Android, and other similar devices. The service utilizes dispatch software to send the nearest driver to your location. The service provides a cashless solution that charges the ride directly to the user's credit card on file.  A mobile phone user must download the UBER application software and will then be asked to create an account. The UBER software then records the user's name, mobile number, email, language, and billing

16

*Cordas vs. Uber Technologies, Inc.*
**Class Action Complaint for Damages**

information. Most importantly, UBER records a user's credit card or PayPal account to use the UBER services. Once the UBER app software user has chosen a vehicle type, the software attempts to mark the user's position on the UBER app software generated map with a pin. This pin represents where the driver will be expecting to pick the UBER user up. The UBER user can also manually type in the pickup location. Once the UBER user's location is set, the user taps the "Set Pickup Location" button. The entire UBER process is entirely cashless. All fare payments are handled automatically by the UBER service and the user's credit card or payment method on file.

78.     The nexus of this instant action is Defendant UBER's deceptive, false, misleading and illusory business policies and practices that are designed and created to dissemble and deflect their unsuspecting consumers for UBER's true purpose – to generate millions of dollars based on their fraudulent, unearned and unconscionable "Cancellation Fees" that are pure bottom-line profit to the company.

79.     It is the Plaintiffs' contention that Defendant UBER'S entire business and technology platform is primarily designed to generate profit with unlawful "Cancellation Fees". Specifically, Plaintiff contends that the UBER'S algorithmic software is intentionally designed to charge a cancellation fee regardless of circumstances to the customer/driver.  These cancellation fees are then automatically and unilaterally charged to the customer's account and debited from the customer's payment method on file.  These counterfeit cancellation fees remain on the consumer's account until the user challenges the fraudulent fee (a majority of the time, this fee goes unnoticed/unchallenged), thereby allowing UBER to benefit and capitalize on a service (or lack thereof) that they never performed, nor had any intention of ever performing.  Thus, UBER is truly not an innovative Transportation Network Company, but rather a disingenuous, deceptive scheme focused on the pursuit of defrauding its users (who are all members of the general public) into paying unearned, unconscionable cancellation fees.

80.     Plaintiff Cordas and many so similarly situated, have been deceptively, fraudulently, and intentionally/negligently enticed into using "UBER's ride sharing mobile

application and service enrollment upon the false promise that UBER will deliver cost effective and efficient ride sharing services.

81.     UBER's ride service is incidental and secondary to their primary focus of intentionally and deliberately racking up millions of dollars of fraudulent cancellation fees.

82.     Defendant UBER'S "cancellation-fee" policy is a ruse and completely illusory as advertised.  The illusive and omitting cancellation fee policy states that if a user cancels their respective ride request within 10 minutes of the UBER provided estimated time of arrival, they will be charged a cancellation fee.  In addition, the User will also be charged a cancellation fee if they are not present when the driver shows up.  However, at no point in time is the UBER user ever made aware that they will be charged a cancellation fee for no fault of their own, and then be required to take affirmative action to reverse the charge after it is already taken from their payment account.  Specifically, when the driver doesn't show up as requested, and the estimated time of arrival is outside of the 10 minute mark, the UBER user is **automatically** assessed a cancellation fee despite the fact that they were waiting at the prescribed location as contracted for.   The UBER user is then forced to contact UBER and request a refund as their money has already been taken by UBER and they now have to wait for reimbursement accordingly.  It is intentionally telling that this fraudulent policy is omitted from the stated cancellation fee policy (This type of policy, or lack thereof, also promotes and is a derivative to, other fraudulent activity, such as "ghosting" stops in order to maximize UBER and driver profits).  If these intentional misrepresentations, fraudulent concealments, and deceptive business policies, practices and procedures were known to the public, then Defendant UBER'S windfall of revenue would not exist.  If customers were properly informed, as opposed to constructively and/or intentionally misled, they would NOT enroll in UBER'S services and would not subject themselves to UBER'S cancellation fee billing bonanza.

83.     These intentional/negligent, fraudulent, deceptive and misleading policies, procedures, and practices of Defendant UBER allow them to increase revenues at the expense of the general public and their competitors.

84.     Defendant UBER'S actions, as detailed above, are part of a statewide and/or nationwide corporate plan and scheme, which affected all customers who enrolled in UBER's mobile application and ride service.   As a direct and proximate result of UBER'S illegal, company-wide plan, practice and scheme, each of the PLAINTIFFS were:  (1) deceived into downloading UBER's mobile application software; (2) enticed into linking either a credit card, bank account or other payment mode or method to the UBER enrollment software service; (3) fraudulently, intentionally and negligently charged for illusory cancellation fees; and finally, (4) victimized by UBER'S policies and practices set forth herein.

85.     Therefore, if this deceptive business practice was known to the public, Defendant UBER'S windfall of revenue based on misleading, deceptive, and fraudulent business practices would not exist because if customers were properly informed, as opposed to constructively and/or intentionally misled, they would not use Defendant UBER'S services.

86.     Defendant UBER'S' deceptive and illusory "cancellation-fee" policy and practice constitutes unfair, unlawful, or fraudulent business activity prohibited by the *UCL*, *California Business & Professions Code Sections* 17200-17208.

87.      Defendant UBER'S employment and utilization of such business practices constitutes an unfair business practice, unfair competition, and provides an unfair advantage over UBER'S competitors.   PLAINTIFFS seek full restitution and disgorgement of said monies from UBER, as necessary and according to proof, to restore any and all monies withheld, acquired, or converted by UBER by means of the unfair practices complained of herein.

88.     The unlawful business practices of UBER are likely to continue to mislead the public and present a continuing threat to the public, and unfair business practice. These violations constitute a threat and unfair business policy. The Court is authorized to order an injunction, and/or disgorgement of fees to affected members of the public as a remedy for any violations of *Business & Professions Code* Sections 17200, et seq.  In addition, PLAINTIFFS allege that UBER violated numerous California *Penal Code* statutes.

89.     Defendant UBER has been unjustly enriched and must be required to make restitution to Plaintiffs and other California consumers, disgorge themselves of all ill-gotten

19

*Cordas vs. Uber Technologies, Inc.*
**Class Action Complaint for Damages**

gains, and/or be subject to other equitable relief pursuant to *California Business & Professions Code* Section 17203 & 17204.  All such remedies are cumulative of relief under other laws, pursuant to *California Business & Professions Code section* 17205.  Additionally, Plaintiffs are entitled to injunctive relief and attorney's fees as available under California *Business and Professions Code* Section 17200 and related sections.

## IX.    SECOND CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW PURSUANT TO CALIFORNIA *BUSINESS & PROFESSIONS CODE* SECTION 17500 ET SEQ.
### (On Behalf of the Subclass)

90.    As a SECOND, separate, and distinct cause of action, PLAINTIFFS complain against Defendant UBER and DOES 1 through 50, inclusive, and re-allege all the allegations contained in this Complaint and incorporates them by reference into this cause of action as though fully set forth herein.

91.    California *Business & Professions Code* Section 17500, et seq., prohibits acts of deceptive and misleading advertising.  Specifically, "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to...…induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised".

92.     Defendant UBER'S illegal, deceptive, and misleading "cancellation-fee" policies and procedures as advertised and stated in their posted terms and conditions, as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to California *Business and Professions* Code §§ 17500, *et seq*. because Defendant UBER has advertised their Products in a manner that is untrue or misleading, or that is known to Defendant to be untrue or misleading.

93.     It is the Plaintiffs' contention that Defendant UBER'S entire business and technology platform is primarily designed to generate profit with unlawful "Cancellation Fees". Specifically, Plaintiff contends that the UBER'S algorithmic software is intentionally designed to charge a cancellation fee regardless of circumstances to the customer/driver.  These cancellation fees are then automatically and unilaterally charged to the customer's account and debited from the customer's payment method on file.  These counterfeit cancellation fees remain on the consumer's account until the user challenges the fraudulent fee (a majority of the time, this fee goes unnoticed/unchallenged), thereby allowing UBER to benefit and capitalize on a service (or lack thereof) that they never performed, nor had any intention of ever performing.  Thus, UBER is truly not an innovative Transportation Network Company, but rather a disingenuous, deceptive scheme focused on the pursuit of defrauding its users (who are all members of the general public) into paying unearned, unconscionable cancellation fees.

94.     Plaintiff Cordas and many so similarly situated, have been deceptively, fraudulently, and intentionally/negligently enticed into using UBER's ride sharing mobile application and service enrollment upon the false promise that UBER will deliver cost effective and efficient ride sharing services.

95.     UBER's ride service is incidental and secondary to their primary focus of intentionally and deliberately racking up millions of dollars of fraudulent cancellation fees.

96.     Defendant UBER'S "cancellation-fee" policy is a ruse and completely illusory as advertised.  The illusive and omitting cancellation fee policy states that if a user cancels their respective ride request within 10 minutes of the UBER provided estimated time of arrival, they will be charged a cancellation fee.  In addition, the User will also be charged a cancellation fee if

they are not present when the driver shows up.  However, at no point in time is the UBER user ever made aware that they will be wrongfully charged a cancellation fee for no fault of their own, and then be required to take affirmative action to reverse the charge after it is already taken from their payment account.  Specifically, when the driver doesn't show up as requested, and the estimated time of arrival is outside of the 10 minute mark, the UBER user is **automatically** assessed a cancellation fee despite the fact that they were waiting at the prescribed location as contracted for.   The UBER user is then forced to contact UBER and request a refund as their money has already been taken by UBER and they now have to wait for reimbursement accordingly.  It is intentionally telling that this fraudulent policy is omitted from the stated cancellation fee policy (This type of policy, or lack thereof, also promotes and is a derivative to, other fraudulent activity, such as "ghosting" stops in order to maximize UBER and driver profits).  If these intentional misrepresentations, fraudulent concealments, and deceptive business policies, practices and procedures were known to the public, then Defendant UBER'S windfall of revenue would not exist.  If customers were properly informed, as opposed to constructively and/or intentionally misled, they would NOT enroll in UBER'S services and would not subject themselves to UBER'S cancellation fee billing bonanza.

97.     These intentional/negligent, fraudulent, deceptive and misleading policies, procedures, and practices of Defendant UBER allow them to increase revenues at the expense of the general public and their competitors. Defendant UBER'S actions, as detailed above, are part of a statewide and/or nationwide corporate plan and scheme, which affected all customers who enrolled in UBER's mobile application and ride service.   As a direct and proximate result of UBER'S illegal, company-wide plan, practice and scheme, each of the PLAINTIFFS were: (1) deceived into downloading UBER's mobile application software; (2) enticed into linking either a credit card, bank account or other payment mode or method to the UBER enrollment software service; (3) fraudulently, intentionally and negligently charged for illusory cancellation fees; and finally, (4) victimized by UBER'S policies and practices set forth herein.

98.     Therefore, if this deceptive business practice was known to the public, Defendant UBER'S windfall of revenue based on misleading, deceptive, and fraudulent business practices

would not exist because if customers were properly informed, as opposed to constructively and/or intentionally misled, they would not use Defendant UBER'S services.

99.    Defendant UBER'S' deceptive and illusory "cancellation-fee" policy and practice constitutes unfair, unlawful, or fraudulent business activity prohibited by the *UCL*, *California Business & Professions Code Sections* 17200-17208.

100.    Defendant UBER'S' deceptive advertising policy and practice constitutes unfair, unlawful, or fraudulent business activity prohibited by the *UCL*, *California Business & Professions Code Sections* 17500.

101.    Defendant UBER'S employment and utilization of such business practices constitutes an unfair business practice, unfair competition, and provides an unfair advantage over UBER'S competitors.   PLAINTIFFS seek full restitution and disgorgement of said monies from UBER, as necessary and according to proof, to restore any and all monies withheld, acquired, or converted by UBER by means of the unfair practices complained of herein.

102.    The unlawful business practices of Defendant UBER are likely to continue to mislead the public and present a continuing threat to the public, and unfair business practice. These violations constitute a threat and unfair business policy. The Court is authorized to order an injunction, and/or disgorgement of fees to affected members of the public as a remedy for any violations of *Business & Professions Code* sections 17500, et seq.  In addition, PLAINTIFFS allege that UBER violated numerous California *Penal Code* statutes.

## X.    THIRD CAUSE OF ACTION FOR BREACH OF CONTRACT
### (On Behalf of the Class)

103.    As a THIRD, separate, and distinct cause of action, PLAINTIFFS complain against Defendant UBER and DOES 1 through 50, inclusive, and re-allege all the allegations contained in this Complaint and incorporates them by reference into this cause of action as though fully set forth herein.

104.    Defendant UBER was required to develop, create, and implement it's contract for ride services, more specifically, its "cancellation-fee" policies and procedures in a clear and

23

*Cordas vs. Uber Technologies, Inc.*
**Class Action Complaint for Damages**

understandable manner, not in a ambiguous, deceptive, fraudulent, intentional/negligent and evasive manner.

105.   Defendant UBER did not write the contract in a manner in which the PLAINTIFFS or the Class could possibly know that Defendant UBER'S "cancellation-fee" policies and procedures, as specifically and intricately identified and stated in sections 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 ,36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, and 60, as incorporated by reference herein, were part of a deceptive statewide and/or nationwide corporate plan and scheme to fraudulently generate profits at the expense of their customers and competitors, which affected all customers who purchased ride services from Defendant UBER.

106.   As a direct and proximate result of UBER'S illegal, company-wide plan, practice and scheme, each of the PLAINTIFFS were:  (1) deceived into downloading UBER's mobile application software; (2) enticed into linking either a credit card, bank account or other payment mode or method to the UBER enrollment software service; (3) fraudulently, intentionally and negligently charged for illusory cancellation fees; and finally, (4) victimized by UBER'S policies and practices set forth herein.

107.   Defendant UBER drafted their adhesion contract and entered into that same contract with PLAINTIFFS and the Class.

108.   Defendant UBER'S deceptive, fraudulent, misleading conduct breached that contract and caused an ascertainable loss to PLAINTIFFS and the Class.

109.   PLAINTIFFS are entitled to recover all fees paid to Defendant UBER, and DOES 1 through 50, under these fraudulent, intentional/negligent, deceptive and misleading business practices, in violation of federal and state, case and statutory law, including but not limited to unfair competition laws.

110.   Because of the foregoing, PLAINTIFF and the Class members are entitled to damages in an amount to be proven at trial

24

*Cordas vs. Uber Technologies, Inc.*
**Class Action Complaint for Damages**

## XI.   FOURTH CAUSE OF ACTION FOR FRAUD/PROMISE WITHOUT INTENT TO PERFORM
### (On Behalf of the Class)

111.   As a FOURTH, separate, and distinct cause of action, PLAINTIFFS complain against Defendant UBER and DOES 1 through 50, inclusive, and re-allege all the allegations contained in this Complaint and incorporates them by reference into this cause of action as though fully set forth herein.

112.   Defendant UBER, and DOES 1 through 50, inclusive, actively and fraudulently concealed from PLAINTIFFS and the Class, the illegal, company-wide plan, practice and scheme, of their deceptive "cancellation-fee" policies and procedures, as specifically and intricately identified and stated in sections 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 ,36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, and 60, as incorporated by reference herein, which affected all customers who downloaded the UBER mobile application software; linked either a credit card, bank account or other payment mode or method to the UBER enrollment software service, and as a result were fraudulently and intentionally charged for illusory cancellation fees and victimized by UBER'S policies and practices.

113.   Specifically, Defendant UBER took affirmative actions to conceal, suppress, hide and/or otherwise minimize the illegal company-wide practice and scheme of DEFENDANTS' deceptive, misleading, and fraudulent "cancellation-fee" policies and procedures as specifically and intricately identified and stated in sections 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 ,36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, and 60, as incorporated by reference herein, to fraudulently generate profits at the expense of their customers and competitors.

114.   As a direct and proximate result of the fraudulent concealment by Defendant UBER, and DOES 1 through 50, and each of them, concerning the illegal and illusory "cancellation-fee" policies and procedures, and as intricately identified and stated in sections 26,

25

*Cordas vs. Uber Technologies, Inc.*
**Class Action Complaint for Damages**

27, 28, 29, 30, 31, 32, 33, 34, 35 ,36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, and 60, as incorporated by reference herein, PLAINTIFFS have suffered and are continuing to suffer severe and permanent financial damage in an amount not yet ascertained, but in excess of the jurisdictional minimum of this Court.

115.    PLAINTIFFS are informed and allege herein that Defendant UBER'S concealment in this regard was done intentionally and fraudulently with the design to prevent PLAINTIFFS and the Class from becoming aware of the full nature and extent of the fraudulent, misleading, and deceptive nature of their illegal and illusory "cancellation-fee" policies and procedures".  UBER's ride service is incidental and secondary to their primary focus of intentionally and deliberately racking up millions of dollars of fraudulent cancellation fees.

116.    If these intentional misrepresentations, fraudulent concealments, and deceptive business practices were known to the public, then Defendant UBER'S windfall of revenue would not exist.  If customers were properly informed, as opposed to constructively and/or intentionally misled, they would NOT sign up for and utilize Defendant UBER'S fraudulent and deceptive services.

117.    Accordingly, PLAINTIFFS are entitled to punitive and exemplary damages in an amount sufficient to punish and deter the Defendant UBER'S conduct pursuant to.

### XII.    FIFTH CAUSE OF ACTION FOR FRAUDULENT CONCEALMENT
**(On Behalf of the Class)**

118.    As a FIFTH, separate, and distinct cause of action, PLAINTIFFS complain against Defendant UBER and DOES 1 through 50, inclusive, and re-allege all the allegations contained in this Complaint and incorporates them by reference into this cause of action as though fully set forth herein.

119.    Defendant UBER, and DOES 1 through 50, inclusive, actively and fraudulently concealed from PLAINTIFFS and the Class, the illegal, company-wide plan, practice and scheme, of their deceptive "cancellation-fee" policies and procedures, as specifically and

26

*Cordas vs. Uber Technologies, Inc.*
**Class Action Complaint for Damages**

intricately identified and stated in sections 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 ,36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, and 60, as incorporated by reference herein, which affected all customers who downloaded the UBER mobile application software; linked either a credit card, bank account or other payment mode or method to the UBER enrollment software service, and as a result were fraudulently and intentionally charged for illusory cancellation fees and victimized by UBER'S policies and practices.

120.   Specifically, Defendant UBER took affirmative actions to conceal, suppress, hide and/or otherwise minimize the illegal company-wide practice and scheme of DEFENDANTS' deceptive, misleading, and fraudulent "cancellation-fee" policies and procedures as specifically and intricately identified and stated in sections 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 ,36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, and 60, as incorporated by reference herein, to fraudulently generate profits at the expense of their customers and competitors.

121.   As a direct and proximate result of the fraudulent concealment by Defendant UBER, and DOES 1 through 50, and each of them, concerning the illegal and illusory "cancellation-fee" policies and procedures, and as intricately identified and stated in sections 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 ,36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, and 60, as incorporated by reference herein, PLAINTIFFS have suffered and are continuing to suffer severe and permanent financial damage in an amount not yet ascertained, but in excess of the jurisdictional minimum of this Court.

122.   PLAINTIFFS are informed and allege herein that Defendant UBER'S concealment in this regard was done intentionally and fraudulently with the design to prevent PLAINTIFFS and the Class from becoming aware of the full nature and extent of the fraudulent, misleading, and deceptive nature of their illegal and illusory "cancellation-fee" policies and procedures".

123.    If these intentional misrepresentations, fraudulent concealments, and deceptive business practices were known to the public, then Defendant UBER'S windfall of revenue would not exist.  If customers were properly informed, as opposed to constructively and/or intentionally misled, they would NOT sign up for and utilize Defendant UBER'S fraudulent and deceptive services.

124.    Accordingly, PLAINTIFFS are entitled to punitive and exemplary damages in an amount sufficient to punish and deter the Defendant UBER'S conduct.

## XIII.   SIXTH CAUSE OF ACTION FOR INTENTIONAL MISREPRESENTATION
### (On Behalf of the Class)

125.    As a SIXTH, separate, and distinct cause of action, PLAINTIFFS complain against Defendant UBER and DOES 1 through 50, inclusive, and re-allege all the allegations contained in this Complaint and incorporates them by reference into this cause of action as though fully set forth herein.

126.    PLAINTIFFS are informed and believes and thereon alleges that the Defendant UBER, and DOES 1 through 50, inclusive, and each of them, intentionally misrepresented to PLAINTIFFS and the Class, the illegal company-wide practice and scheme of Defendant UBER'S deceptive, misleading, and fraudulent "cancellation -fee" policies and procedures.

127.    These intentional misrepresentations are specifically and intricately identified and stated in sections are specifically and intricately identified and stated in sections 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 ,36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, and 60, as incorporated by reference herein.

128.    These aforementioned intentional misrepresentations made by Defendant UBER, and DOES 1 through 50, and each of them, regarding UBER'S fraudulent and illusory "cancellation-fee" policies and procedures were intentionally, knowingly, and actively false and inaccurate when made, and were made with intentional reckless disregard for their truth and accuracy.

28

*Cordas vs. Uber Technologies, Inc.*
**Class Action Complaint for Damages**

129.    PLAINTIFFS are informed and believes and thereon alleges that Defendant UBER, and DOES 1 through 50, and each of them, knew or should have known that the misrepresentations and warranties made by them concerning the intentional fraudulent and deceptive nature of the "cancellation-fee" policies and procedures were not justified and accurate at the time they were made, in light of the information available to Defendant UBER at the time the representations and were made.

130.    Said misrepresentations were made by Defendant UBER, and DOES 1 through 50, with reckless disregard for their accuracy and with no reasonable basis for believing them to be true and accurate.

131.    PLAINTIFFS relied on the intentional misrepresentations of Defendant UBER, and each of them, in causing them to download the UBER mobile application software; linking either a credit card, bank account or other payment mode or method to the UBER enrollment software service, and as a result were fraudulently and intentionally charged for illusory cancellation fees and victimized by UBER'S policies and practices, all to PLAINTIFFS' detriment in reliance that the UBER'S statements and material, intentional misrepresentations were in fact accurate when made by Defendant UBER.

132.    Specifically, PLAINTIFFS are informed and believes and thereon alleges that the Defendant UBER, and DOES 1 through 50, inclusive, and each of them, in bad faith, knowingly, fraudulently, actively, and intentionally, misrepresented to PLAINTIFFS and the Class, the illegal company-wide practice and scheme of DEFENDANTS' deceptive and fraudulent policies and practices that were specifically designed and created to dissemble and deflect their unsuspecting consumers for UBER's true purpose of generating millions of dollars based on their fraudulent, unearned and unconscionable "Cancellation Fees" that are pure bottom-line profit to the company, as specifically and intricately identified and stated in sections 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 ,36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, and 60, as incorporated by reference herein.

*Cordas vs. Uber Technologies, Inc.*
**Class Action Complaint for Damages**

133.    PLAINTIFFS were ignorant of the falsity and inaccuracies of the misrepresentations and warranties made by UBER, until they discovered the extent and scope of Defendant UBER'S intentional misrepresentations as specifically and intricately identified and stated sections 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 ,36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, and 60, as incorporated by reference herein.

134.    As a direct and proximate result of the intentional misrepresentations by Defendant UBER, and DOES 1 through 50, and each of them, concerning the illegal and illusory "cancellation-fee" policies and procedures, as alleged herein, PLAINTIFFS have suffered and are continuing to suffer severe and permanent financial damage in an amount not yet ascertained, but in excess of the jurisdictional minimum of this Court.

135.    As a result of the foregoing, PLAINTIFF and the Class members are entitled to damages in an amount to be proven at the time of trial in this matter.

## XIV.    SEVENTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION
### (On Behalf of the Class)

136.    As a SEVENTH, separate, and distinct cause of action, PLAINTIFFS complain against Defendant UBER and DOES 1 through 50, inclusive, and re-allege all the allegations contained in this Complaint and incorporates them by reference into this cause of action as though fully set forth herein.

137.    PLAINTIFFS are informed and believes and thereon alleges that the Defendant UBER, and DOES 1 through 50, inclusive, and each of them, negligently misrepresented to PLAINTIFFS and the Class, the illegal company-wide practice and scheme of Defendant UBER'S deceptive, misleading, and fraudulent "cancellation -fee" policies and procedures.

138.    These negligent misrepresentations are specifically and intricately identified and stated in sections 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 ,36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, and 60, as incorporated by reference herein.

139.     These aforementioned negligent misrepresentations made by Defendant UBER, and DOES 1 through 50, and each of them, regarding UBER'S illusory "cancellation-fee" policies and procedures were negligently false and inaccurate when created, designed, and implemented with reckless disregard for their truth and accuracy.

140.     PLAINTIFFS are informed and believes and thereon alleges that Defendant UBER, and DOES 1 through 50, and each of them, knew or should have known that the misrepresentations and warranties made by them concerning the fraudulent and deceptive nature of the "cancellation-fee" policies and procedures were not justified and accurate at the time they were made, in light of the information available to Defendant UBER at the time the representations and were made.

141.     These misrepresentations were made by Defendant UBER, and DOES 1 through 50, with reckless disregard for their accuracy and with no reasonable basis for believing them to be true and accurate.

142.     PLAINTIFFS relied on the negligent misrepresentations of Defendant UBER, and each of them, in causing them to download the UBER mobile application software; linking either a credit card, bank account or other payment mode or method to the UBER enrollment software service, and as a result were fraudulently and negligently charged for illusory cancellation fees and victimized by UBER'S policies and practices, all to PLAINTIFFS' detriment in reliance that the UBER'S statements and material, negligent misrepresentations were in fact accurate when made by Defendant UBER.

143.     Specifically, PLAINTIFFS are informed and believes and thereon alleges that the Defendant UBER, and DOES 1 through 50, inclusive, and each of them, in bad faith, knowingly, fraudulently, actively, and negligently, misrepresented to PLAINTIFFS and the Class, the illegal company-wide practice and scheme of DEFENDANTS' deceptive and fraudulent policies and practices that were specifically designed and created to dissemble and deflect their unsuspecting consumers for UBER's true purpose of generating millions of dollars based on their fraudulent,

unearned and unconscionable "Cancellation Fees" that are 100% pure bottom-line profit to the company, as specifically and intricately identified and stated in sections 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 ,36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, and 60, as incorporated by reference herein.

144.    PLAINTIFFS were ignorant of the falsity and inaccuracies of the misrepresentations and warranties made by UBER, until they discovered the extent and scope of Defendant UBER'S negligent misrepresentations as specifically and intricately identified and stated sections 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 ,36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, and 60, as incorporated by reference herein.

145.    As a direct and proximate result of the negligent misrepresentations by Defendant UBER, and DOES 1 through 50, and each of them, concerning the illegal and illusory "cancellation-fee" policies and procedures, as alleged herein, PLAINTIFFS have suffered and are continuing to suffer severe and permanent financial damage in an amount not yet ascertained, but in excess of the jurisdictional minimum of this Court.

146.    As a result of the foregoing, PLAINTIFF and the Class members are entitled to damages in an amount to be proven at the time of trial in this matter.


**XV.    EIGHTH CAUSE OF ACTION FOR BREACH OF COVENANT OF GOOD FAITH & FAIR DEALING**
**(On Behalf of the Class)**

147.    As a EIGHTH, separate, and distinct cause of action, PLAINTIFFS complain against Defendant UBER and DOES 1 through 50, inclusive, and re-allege all the allegations contained in this Complaint and incorporates them by reference into this cause of action as though fully set forth herein.

148.    Defendant UBER and DOES 1 through 50, acted intentionally, fraudulently, and in bad faith, created and implemented their deceptive, false, misleading and illusory business

policies and practices, which allowed them to generate millions of dollars based on their

fraudulent, unearned and unconscionable "Cancellation Fees".

149.    Specifically, PLAINTIFFS are informed and believe and thereon allege that the

Defendant UBER, and DOES 1 through 50, inclusive, and each of them, in bad faith, knowingly,

fraudulently, actively, and intentionally, misrepresented to PLAINTIFFS and the Class, the

illegal company-wide practice and scheme of DEFENDANTS' deceptive and fraudulent policies

and practices that were specifically designed and created to dissemble and deflect their

unsuspecting consumers for UBER's true purpose of generating millions of dollars based on

their fraudulent, unearned and unconscionable "Cancellation Fees" that are pure bottom-line

profit to the company, as specifically and intricately identified and stated in sections 26, 27, 28,

29, 30, 31, 32, 33, 34, 35 ,36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54,

55, 56, 57, 58, 59, and 60, as incorporated by reference herein.

150.    As such, Defendant UBER'S failure to deal fairly and in good faith caused

damage to PLAINTIFFS and the Class, as each of the PLAINTIFFS were:  (1) deceived into

downloading UBER's mobile application software; (2) enticed into linking either a credit card,

bank account or other payment mode or method to the UBER enrollment software service; (3)

fraudulently, intentionally and negligently charged for illusory cancellation fees; and finally, (4)

victimized by UBER'S policies and practices set forth herein,  as specifically and intricately

identified and stated in sections 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 ,36, 37, 38, 39, 40, 41, 42,

43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, and 60, as incorporated by

reference herein.

151.    As a result of the foregoing, PLAINTIFF and the Class members are entitled to

damages in an amount to be proven at the time of trial in this matter.

## XVI.   NINTH CAUSE OF ACTION FOR WILLFUL MISCONDUCT
### (On Behalf of the Class)

152.    As a NINETH, separate, and distinct cause of action, PLAINTIFFS complain against Defendant UBER and DOES 1 through 50, inclusive, and re-allege all the allegations contained in this Complaint and incorporates them by reference into this cause of action as though fully set forth herein.

153.    PLAINTIFFS are informed and believe and thereon allege that willful misconduct occurred in the design, creation, implementation, and dissemination of Defendant UBER'S fraudulent deceptive, false, misleading and illusory business policies and practices.  These deceptive and fraudulent policies and practices were specifically designed and created to dissemble and deflect their unsuspecting consumers for UBER's true purpose – to generate millions of dollars based on their fraudulent, unearned and unconscionable "Cancellation Fees" that are pure bottom-line profit to the company, as specifically and intricately identified and stated in sections 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 ,36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, and 60, as incorporated by reference herein .

154.    Defendant UBER'S actions, as identified herein, were part of a statewide and/or nationwide corporate plan and scheme, which affected all customers who enrolled in UBER's mobile application and ride service.   As a direct and proximate result of UBER'S illegal, company-wide plan, practice and scheme, each of the PLAINTIFFS were:  (1) deceived into downloading UBER's mobile application software; (2) enticed into linking either a credit card, bank account or other payment mode or method to the UBER enrollment software service; (3) fraudulently, intentionally and negligently charged for illusory cancellation fees; and finally, (4) victimized by UBER'S policies and practices set forth herein,  as specifically and intricately identified and stated in sections 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 ,36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, and 60, as incorporated by reference herein.

34

*Cordas vs. Uber Technologies, Inc.*
**Class Action Complaint for Damages**

155.     As a As a result of the foregoing, PLAINTIFF and the Class members are entitled to damages in an amount to be proven at the time of trial in this matter.

## XVII.  TENTH CAUSE OF ACTION FOR UNJUST ENRICHMENT
### (On Behalf of the Class)

156.     As a TENTH, separate, and distinct cause of action, PLAINTIFFS complain against Defendant UBER and DOES 1 through 50, inclusive, and re-allege all the allegations contained in this Complaint and incorporates them by reference into this cause of action as though fully set forth herein.

157.     Defendant UBER's deceptive, false, misleading and illusory business policies and practices were designed and created to dissemble and deflect their unsuspecting consumers for UBER's true purpose – to generate millions of dollars based on their fraudulent, unearned and unconscionable "Cancellation Fees" that are pure bottom-line profit to the company, as specifically and intricately identified and stated in sections 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 ,36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, and 60, as incorporated by reference herein.

158.     Defendant UBER'S actions, as identified herein, were part of a statewide and/or nationwide corporate plan and scheme, which affected all customers who enrolled in UBER's mobile application and ride service.   As a direct and proximate result of UBER'S illegal, company-wide plan, practice and scheme, each of the PLAINTIFFS were:  (1) deceived into downloading UBER's mobile application software; (2) enticed into linking either a credit card, bank account or other payment mode or method to the UBER enrollment software service; (3) fraudulently, intentionally and negligently charged for illusory cancellation fees; and finally, (4) victimized by UBER'S policies and practices set forth herein,  as specifically and intricately identified and stated in sections 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 ,36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, and 60, as incorporated by reference herein.

159.     The enrichment of Defendant UBER was at the direct expense of PLAINTIFF and the Class.

160.     The circumstances were such that equity and good conscience require Defendant UBER to make full restitution to PLAINTIFF and the Class.

161.     Defendant UBER has failed to make restitution.

162.     As a result of Defendant UBER'S actions, or lack thereof, PLAINTIFF and the Class have been damaged in an exact amount to be proven at the time of trial in this matter.

## PRAYER FOR RELIEF

**WHEREFORE, PLAINTIFF**, on behalf of himself, and all current and former customers of Defendant UBER (as specifically identified in the proposed class and subclass herein) who, within the Liability Period, enrolled in UBER's mobile application and ride service that have been subjected to fraudulent and false cancellation fees from Defendant UBER, and on behalf of the general public, request the following relief:

1.     A determination that this action may proceed and be maintained by PLAINTIFF as a class action pursuant to *Federal Rules of Civil Procedure*, Rules 23(a) and 23(b)(3) on behalf of himself and the class as alleged herein;

2.     The issuance of notice pursuant to *Federal Rules of Civil Procedure*, Rule 23 to all PLAINTIFF class members who enrolled in UBER's mobile application and ride service that have been subjected to fraudulent and false cancellation fees from Defendant UBER within the four (4) year period preceding the filing of this Complaint in accordance with the statute of limitations of the *UCL, California Business & Professions Code Sections* 17200 et. seq. and 17500 et. seq.;

3.     A declaratory judgment that UBER has violated the Unfair Competition provisions of the *California Business & Professions Code Sections* 17200-17208, with its false, deceptive, fraudulent, willful, and misleading business practices as to the PLAINTIFF and all similarly situated class members;

4.      A declaratory judgment that UBER fraudulently concealed, omitted, and or failed to disclose material facts;

5.      A declaratory judgment that UBER negligently misrepresented material facts to a substantial segment of its audience;

6.      A declaratory judgment that UBER intentionally misrepresented material facts to a substantial segment of its audience;

7.      A declaratory judgment that UBER breached the covenant of good faith and fair dealing to a substantial segment of its audience;

8.      A declaratory judgment that UBER has been unjustly enriched through its false, intentional, deceptive, fraudulent, and misleading business practices;

9.      A declaratory judgment that members of the Class are entitled to actual damages, entry of final judgment and injunctive relief compelling Defendant UBER to cease its fraudulent and deceptive advertising practices;

10.     A declaratory judgment that UBER deliberately misrepresented or failed to disclose material facts to Plaintiffs and the Class;

11.     A declaratory judgment that UBER'S conduct constitutes an unconscionable business practice;

12.     A declaratory judgment that, with regard to PLAINTIFFS' claims under *California Business &Professions Code Sections* 17200 et. seq. and 17500 et. seq., PLAINTIFFS are entitled to a four (4) year statute of limitations;

13.     A permanent injunction enjoining Defendant UBER and any and all persons acting in concert or in participation with UBER from directly or indirectly committing the unlawful, unfair, and deceptive business acts and practices as alleged above, pursuant to the Unfair Competition provisions of the *California Business & Professions Code Sections* 17200 et. seq. and 17500 et. seq., as well as federal and state, case and statutory law;

14.     An award to PLAINTIFFS of restitution and/or disgorgement of all amounts owed for UBER'S violation of the Unfair Competition provisions of the

*California Business & Professions Code Sections* 17200 et. seq. and 17500 et. seq., as well as federal and state, case and statutory law with its false, deceptive, fraudulent, willful, and misleading business practices as to the PLAINTIFFS and all similarly situated class members, and interest subject to proof at the time of trial;

15.   An award to PLAINTIFFS of reasonable attorneys' fees and costs pursuant to *California Civil Code Section* 1021.5 and *California Business & Professions Code Sections* 17200 et. seq. and 17500 et. seq., as well as federal and state, case and statutory law;

16.   An award of pre and post judgment interest; and

17.   An award of such other and further relief as this Court may deem just and appropriate.

## PLAINTIFFS' DEMAND FOR JURY TRIAL

PLAINTIFF, on behalf of himself and all other similarly situated current and former customers of Defendant UBER (as specifically identified in the proposed class and subclass herein) who, within the Liability Period, enrolled in UBER's mobile application and ride service that have been subjected to fraudulent and false cancellation fees from Defendant UBER, and on behalf of the general public, hereby demand trial of these claims by jury to the extent authorized by law.

DATED: July 20, 2016            By: _Kristopher P. Badame_____
                                Kristopher P. Badame
                                Joseph Hunter,
                                **BADAME & ASSOCIATES, APC**
                                Attorneys for PLAINTIFFS