1  WILLIAM L. STERN (CA SBN 96105)
   WStern@mofo.com
2  TIFFANY CHEUNG (CA SBN 211497)
   TCheung@mofo.com
3  CLAUDIA M. VETESI (CA SBN 233485)
   CVetesi@mofo.com
4  LUCIA X. ROIBAL (CA SBN 306721)
   LRoibal@mofo.com
5  MORRISON & FOERSTER LLP
   425 Market Street
6  San Francisco, California  94105-2482
   Telephone:     415.268.7000
7  Facsimile:     415.268.7522

8  Attorneys for Defendant
   UBER TECHNOLOGIES, INC.
9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12

13

14  MICHAEL CORDAS, individually and on        Case No. 3:16-cv-04065-RS
    behalf of all others similarly situated,
15                                             **DEFENDANT UBER TECHNOLOGIES,**
                      Plaintiff,               **INC.'S NOTICE OF MOTION AND**
16                                             **MOTION TO COMPEL ARBITRATION**
            vs.                                **AND DISMISS OR STAY LITIGATION;**
17                                             **MEMORANDUM OF POINTS AND**
    UBER TECHNOLOGIES, INC.,                   **AUTHORITIES IN SUPPORT THEREOF**
18
                      Defendant.               Date:     January 5, 2017
19                                             Time:     1:30 p.m.

20                                             Hon. Richard Seeborg
                                               Courtroom 3
21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on January 5, 2017, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 3 of the U.S. District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Uber Technologies, Inc. ("Uber") will, and hereby does, move the Court for an order to compel individual arbitration of Plaintiff Michael Cordas's claims and dismiss this action with prejudice or, in the alternative, stay this action pending the completion of individual arbitration proceedings.[1]  This Motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-14 and upon the grounds that Plaintiff agreed to arbitrate his claims when he consented to the arbitration provision in Uber's Terms and Conditions.

This Motion is based on this Notice of Motion and Motion, Memorandum of Points and Authorities, the Declarations of Tipper Llaguno and Christopher Brauchli and all exhibits thereto, all documents in the Court's file, and on such other argument as may be presented to the Court.

Dated:  November 18, 2016

WILLIAM L. STERN
TIFFANY CHEUNG
CLAUDIA M. VETESI
LUCIA X. ROIBAL
MORRISON & FOERSTER LLP


By:   _/s/ Tiffany Cheung_
　　　TIFFANY CHEUNG

---

[1] This motion satisfies Uber's obligation to respond to the Complaint [ECF No. 1] at this stage.  *See Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 F. App'x 604, 607 (10th Cir. 2011); *JS Barkats PLLC v. BE, Inc.*, No. 12 Civ. 6779 (JFK), 2013 WL 444919, at *2 (S.D.N.Y. Feb. 6, 2013) ("[P]arties are permitted to file motions to stay in lieu of an answer or other dispositive motions.").  Uber reserves the right to file a Rule 12(b) motion at a later time.  *See Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 (9th Cir. 1988).

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................. 2

    A.   Plaintiff Voluntarily Registered for Uber's Services. ............................. 2

    B.   Plaintiff Agreed to Arbitrate His Claims. ............................................... 4

    C.   Plaintiff Ignored His Arbitration Agreement and Filed Suit.................... 7

III. LEGAL STANDARD ........................................................................................ 7

IV.  PLAINTIFF MUST INDIVIDUALLY ARBITRATE HIS CLAIMS............................. 8

    A.   The FAA Governs the Agreement. .......................................................... 8

    B.   Plaintiff Agreed to Arbitrate "Gateway" Arbitrability Issues................. 9

    C.   Even if the Court Finds That It, Rather Than The Arbitrator, Should Decide Arbitrability, Both Gateway Issues Are Satisfied. ................................. 11

        1.   Plaintiff Entered into a Valid Agreement to Arbitrate. ............................. 11

        2.   Plaintiff's Claims Are Covered by the Arbitration Agreement. .............. 14

        3.   The Arbitration Agreement Is Not Unconscionable. ............................... 16

    D.   The Action Should Be Dismissed or Stayed Pending the Completion of Plaintiff's Individual Arbitration.......................................................... 18

V.   CONCLUSION.................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*5381 Partners LLC v. Shareasale.com, Inc.*,
No. 12-CV-4263 (JFB), 2013 WL 5328324 (E.D.N.Y. Sept 23, 2013) .................................. 13

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995) ...................................................................................................... 8

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ................................................................................................ 7, 18

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) ..................................................................................................... 16

*Belton v. Comcast Cable Holdings, LLC*,
151 Cal. App. 4th 1224 (2007) .................................................................................... 16

*Binder v. Aetna Life Ins. Co.*,
75 Cal. App. 4th 832 (1999) ........................................................................................ 12

*Bosinger v. Belden CDT, Inc.*,
358 F. App'x 812 (9th Cir. 2009) ................................................................................. 16

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015)..................................................................................... 9, 10

*Bruster v. Uber Techs., Inc.*,
No. 15-CV-2653, 2016 WL 2962403 (N.D. Ohio May 23, 2016)............................... 2, 10

*Carnival Cruise Lines, Inc. v. Shute*,
499 U.S. 585 (1991) ..................................................................................................... 12

*Chico v. Hilton Worldwide, Inc.*,
No. CV 14–5750–JFW, 2014 WL 5088240
(C.D. Cal. Oct. 7, 2014) ............................................................................................... 13

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000)........................................................................................ 8

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003)......................................................................................................... 8

*Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*,
748 F.3d 249 (5th Cir. 2014)......................................................................................... 9

*Crawford v. Beachbody, LLC*,
No. 14-CV-1583 GPC, 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) .......................... 12

*Crook v. Wyndham Vacation Ownership, Inc.*,
No. 13-CV-03669-WHO, 2013 WL 11275036
(N.D. Cal. Nov. 8, 2013)........................................................................................ 10, 18

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Cullinane v. Uber Techs., Inc.*,
   No. 14-14750-DPW, 2016 WL 3751652 (D. Mass. July 11, 2016) ............................... 2, 8, 11

*Dang v. Samsung Elecs. Co.*,
   No. 14-CV-00530 LHK, 2015 WL 4735520 (N.D. Cal. Aug. 10, 2015) ............................... 18

*Dauod v. Ameriprise Fin. Servs., Inc.*,
   No. 10-CV-00302 CJC (MANx), 2011 WL 6961586 (C.D. Cal. Oct. 12, 2011) ................. 18

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)....................................................................................................... 18

*Delgado v. Progress Fin. Co.*,
   No. 1:14-cv-00033-LJO-MJS, 2014 WL 1756282 (E.D. Cal. May 1, 2014) ........................ 14

*Dream Theater, Inc. v. Dream Theater*,
   124 Cal. App. 4th 547 (2004) ....................................................................................... 10

*Estrada v. CleanNet USA, Inc.*,
   No. C 14-01785 JSW, 2015 WL 833701 (N.D. Cal. Feb. 24, 2015) .................................... 17

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995).......................................................................................................... 14

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012) ............................................................................ 13

*Garcia v. Enter. Holdings, Inc.*,
   78 F. Supp. 3d 1125 (N.D. Cal. 2015) ............................................................................ 13

*Graf v. Match.com, LLC*,
   No. CV-15-3911 PA (MRWx), 2015 WL 4263957, (C.D. Cal. July 10, 2015) .................... 18

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000).............................................................................................................. 7

*Greenspan v. LADT, LLC*,
   185 Cal. App. 4th 1413 (2010) ..................................................................................... 10

*Guadagno v. E*Trade Bank*,
   592 F. Supp. 2d 1263 (C.D. Cal. 2008) ........................................................................ 15

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002)........................................................................................................... 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 07-1827 SI, 2011 WL 2650689 (N.D. Cal. July 6, 2011) ........................................... 14

*Jones v. Wells Fargo Bank*,
   112 Cal. App. 4th 1527 (2003) ..................................................................................... 17

*Koyoc v. Progress Fin. Co.*,
   No. CV 13-09165-RSWL (AGRx), 2014 WL 1878903 (C.D. Cal. May 9, 2014) ............... 15

# TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013)................................................................. 8

*Lainer v. Uber Techs., Inc.*,
No. 2:15-cv-09925-BRO-MRW (C.D. Cal. May 11, 2016) .................................... 1, 11, 14, 19

*Lee v. Uber Techs., Inc.*,
No. 15-C-11756, 2016 WL 5417215 (N.D. Ill. Sept. 21, 2016) .......................................... 2, 10

*Lewis v. UBS Fin. Servs., Inc.*,
818 F. Supp. 2d 1161 (N.D. Cal. 2011) ............................................................... 18

*Luchini v. Carmax, Inc.*,
No. CV F 12-0417 LJO DLB, 2012 WL 2995483 (E.D. Cal. July 23, 2012) ...................... 19

*Micheletti v. Uber Techs., Inc.*,
No. 15-1001, 2016 WL 5793799 (W.D. Tex. Oct. 3, 2016)................................ 2, 10

*Mohamed v. Uber Techs., Inc.*,
836 F.3d 1102 (9th Cir. 2016)................................................................... 2, 10

*Morris v. Redwood Empire Bancorp*,
128 Cal. App. 4th 1305 (2005) ........................................................... 17

*Mortensen v. Bresnan Commc'ns LLC*,
722 F.3d 1151 (9th Cir. 2013)..................................................................... 7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)........................................................................ 11

*Nemec v. Linebarger*,
No. 5:14-CV-01343-PSG, 2014 WL 6847342 (N.D. Cal. Dec. 4, 2014) ...................... 3

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014)............................................................... 8

*Nicosia v. Amazon.com, Inc.*,
No. 14-CV-4513 (SLT) (MDG), 2015 WL 500180 (E.D.N.Y. Feb 4, 2015)................ 12

*O.N. Equity Sales Co. v. Steinke*,
504 F. Supp. 2d 913 (C.D. Cal. 2007) .................................................. 15

*Oracle Am., Inc. v. Myriad Grp., A.G.*,
724 F.3d 1069 (9th Cir. 2013).......................................................... 9, 10

*PacifiCare Health Sys., Inc. v. Book*,
538 U.S. 401 (2003)............................................................... 11

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
55 Cal. 4th 223 (2012) ........................................................ 14, 16, 17

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63, 70 (2010)..................................................... 9, 16

1

## TABLE OF AUTHORITIES
### (Continued)

2

**Page(s)**

3

*Rep. of Nicar. v. Standard Fruit Co.*,
  937 F.2d 469 (9th Cir. 1991)...................................................................... 18

4

*Rimel v. Uber Techs., Inc.*,
  No. 6:15-cv-2191, ECF No. 61 (M.D. Fla. Aug. 4, 2016) ....................................... 2

5

6

*Rodriguez v. Am. Techs., Inc.*,
  136 Cal. App. 4th 1110 (2006) .................................................................... 10

7

*Roszak v. U.S. Foodservice, Inc.*,
  628 F. App'x 513 (9th Cir. Jan. 6, 2016) ......................................................... 10

8

*Sanchez v. Valencia Holding Co., LLC*,
  61 Cal. 4th 899 (2015) ............................................................................ 17

9

10

*Selden v. Airbnb, Inc.*,
  No. 16-cv-00933 (CRC), 2016 WL 6476934 (D.D.C. Nov. 1, 2016)........................ 12, 13, 14

11

*Sena v. Uber Techs. Inc.*,
  No. CV-15-02418-PHX-DLR, 2016 WL 1376445 (D. Ariz. Apr. 7, 2016 ...................... 2, 10

12

*Sheffer v. Samsung Telecomms. Am., LLC*,
  No. CV-13-3466 GW (AJWx), 2014 WL 792124, (C.D. Cal. Feb. 6, 2014) ...................... 18

13

14

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999)..................................................................... 3, 16

15

*Starke v. Gilt Groupe, Inc.*,
  No. 13-CIV-5497 (LLS), 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ........................... 13

16

*Suarez v. Uber Techs., Inc.*,
  No. 8:16-cv-166-T-30MAP, 2016 WL 2348706
  (M.D. Fla. May 4, 2016) ......................................................................... 2, 10

17

18

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904 (N.D. Cal. 2011) .............................................................. 12

19

*Ulbrich v. Overstock.com, Inc.*,
  887 F. Supp. 2d 924 (N.D. Cal. 2012) .............................................................. 17

20

21

*United States v. Sutcliffe*,
  505 F.3d 944 (9th Cir. 2007)........................................................................ 8

22

*Varon v. Uber Techs., Inc.*,
  No. MJG-15-3650, 2016 WL 1752835 (D. Md. May 3, 2016) .................................. 2, 10

23

24

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
  25 Cal. App. 3d 987 (1972).......................................................................... 12

25

**STATUTES**

26

9 U.S.C. § 2 ........................................................................................ 8

27

9 U.S.C. § 4 ........................................................................................ 9

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

**OTHER AUTHORITIES**

AAA Commercial Arbitration Rules, 7(a) ........................................................................ 9

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.      INTRODUCTION**

3

Plaintiff Michael Cordas ("Plaintiff") cannot unilaterally repudiate his binding contract

4

with Uber.  When he created an Uber account and accessed Uber's services—which he has

5

continued to use even after filing this action—Plaintiff expressly agreed to arbitrate the claims he

6

asserts here, and to do so on an individual basis.  Filing this putative class action in federal court

7

violates his binding agreement, and this action cannot proceed.

8

Plaintiff alleges that in July 2015, he "downloaded the mobile software application and

9

enrolled in the UBER Service."  (ECF No. 1, ¶ 24.)  As part of this enrollment process, Plaintiff

10

agreed to be bound by Uber's Terms and Conditions.  The Terms and Conditions include a clear

11

and conspicuous arbitration provision ("Arbitration Agreement").  Under the Arbitration

12

Agreement, Plaintiff: (i) agreed to arbitrate "any dispute, claim or controversy arising out of or

13

relating to the [Terms and Conditions] or the breach, termination, enforcement, interpretation or

14

validity thereof" or the use of Uber's services; and (ii) waived "the right to . . . participate as a

15

plaintiff or class in any purported class action[.]"

16

Ignoring his Arbitration Agreement, Plaintiff has filed a putative class action in this Court,

17

alleging various state law causes of action arising out of Uber's alleged imposition of certain

18

cancellation fees.  The gravamen of Plaintiff's complaint is that Uber's cancellation fee policies

19

and procedures are fraudulent in nature and a violation of Uber's Terms and Conditions.  (*See,*

20

*e.g.*, ECF No. 1, ¶¶ 92, 104.)  Uber vigorously denies Plaintiff's allegations, but the Court need

21

not (and should not) resolve the issue.  Plaintiff's claims fall squarely within the scope of the

22

Arbitration Agreement, and the Court should therefore compel Plaintiff to arbitration.

23

Binding U.S. Supreme Court and Ninth Circuit law require the enforcement of the

24

Arbitration Agreement.  Indeed, earlier this year, Judge O'Connell of the Central District of

25

California enforced the identical Uber "rider" arbitration agreement in a putative class action.

26

*Lainer v. Uber Techs., Inc.*, No. 2:15-cv-09925-BRO-MRW, ECF No. 25 (C.D. Cal. May 11,

27

2016).  Eight weeks later, a District Court judge in Massachusetts enforced the same "rider"

28

clause in a putative class action alleging federal statutory claims.  *Cullinane v. Uber Techs., Inc.*,

1   No. 14-14750-DPW, 2016 WL 3751652 (D. Mass. July 11, 2016).  Moreover, the Ninth Circuit

2   recently upheld Uber's "driver" arbitration clause, rejecting a broadside of challenges the district

3   court had erroneously accepted.  *See Mohamed v. Uber Techs., Inc.*, 836 F.3d 1102 (9th Cir.

4   2016).  Seven other federal district courts have also enforced Uber's "driver" arbitration

5   agreements.[2]

6       The Court should grant Uber's motion and compel arbitration of Plaintiff's claims on an

7   individual basis.

8   **II.     FACTUAL BACKGROUND**

9       **A.     Plaintiff Voluntarily Registered for Uber's Services.**

10      Uber's technology allows users to request transportation services from their smartphones

11  using the Uber App.  (Declaration of Chris Brauchli ("Brauchli Decl.") ¶ 3.)  Requests are

12  transmitted to independent transportation providers in the area who are available to receive

13  transportation requests.  (*Id.*)  Before users can utilize Uber's App to request transportation

14  services, they must register with Uber by creating an Uber account.  (*Id*. at ¶ 4.)

15      Plaintiff alleges that he downloaded the Uber App and "enrolled in the UBER service" on

16  or around July 5, 2015.  (ECF No. 1, ¶ 24.)  Based on Uber's records, a rider account registered to

17  a "Caleb Cordas" was created on July 25, 2015 (and subsequently incurred the allegedly improper

18  cancellation fees on July 28, 2015 and February 1, 2016).  (ECF No. 1, ¶¶ 25-41; Brauchli Decl.

19  ¶ 5.)  Given Plaintiff's allegations regarding his account and the allegedly improper charges, Uber

20  assumes that Plaintiff created and used an account in the name of "Caleb Cordas" at the time of

21

22

23

24      [2] *See Micheletti v. Uber Techs., Inc.*, No. 15-1001, 2016 WL 5793799 (W.D. Tex. Oct. 3, 2016); *Lee v. Uber Techs., Inc.*, No. 15-C-11756, 2016 WL 5417215 (N.D. Ill. Sept. 21, 2016);

25  *Bruster v. Uber Techs., Inc.*, No. 15-CV-2653, 2016 WL 2962403 (N.D. Ohio May 23, 2016), *reconsideration denied*, 2016 WL 4086786 (N.D. Ohio Aug. 2, 2016); *Varon v. Uber Techs., Inc.*,

26  No. MJG-15-3650, 2016 WL 1752835 (D. Md. May 3, 2016), *reconsideration denied*, 2016 WL 3917213 (D. Md. July 20, 2016); *Suarez v. Uber Techs., Inc.*, No. 8:16-cv-166-T-30MAP, 2016

27  WL 2348706 (M.D. Fla. May 4, 2016); *Sena v. Uber Techs. Inc.*, No. CV-15-02418-PHX-DLR, 2016 WL 1376445 (D. Ariz. Apr. 7, 2016), *reconsideration denied*, 2016 WL 4064584 (D. Ariz.

28  May 03, 2016); *Rimel v. Uber Techs., Inc.*, No. 6:15-cv-2191, ECF No. 61 (M.D. Fla. Aug. 4, 2016).

1   the charges in question.[3]  *See, e.g.*, *Nemec v. Linebarger*, No. 5:14-CV-01343-PSG, 2014 WL

2   6847342, at \*3 (N.D. Cal. Dec. 4, 2014) (in determining arbitrability, the court "focus[es] on the

3   factual allegations underlying the claims in the complaint"); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d

4   716, 721 (9th Cir. 1999) (same).

5       Plaintiff would have necessarily had to go through the registration process on the Uber

6   App in order to create the account.  (Brauchli Decl. at ¶ 7d.)  Uber's records show that this

7   account was created using an iPhone.  (*Id*. at ¶ 5.)  At the time the account was created, the

8   iPhone registration process involved three easy steps, each of which was confined to a single

9   screen.  (*Id*. at ¶¶ 6, 7, Exh. A.)  In the first screen, called "Create An Account," Plaintiff

10  submitted an email address, mobile phone number, and a chosen password.  (*Id*. at ¶ 7a.)  By

11  pressing the "next" button on the top right of the screen, which was enabled only after all of the

12  fields were completed, Plaintiff was allowed to proceed to the next step, the "Create A Profile"

13  screen.  There, Plaintiff entered his first and last name for his user profile.  (*Id*. at ¶ 7b.)  Once

14  again, Plaintiff had to press the "next" button at the top right of the screen once the fields were

15  completed, which enabled him to proceed to the next step.  (*Id*.)

16      In the third and final step, the "Link Payment" screen appeared.  There, Plaintiff entered

17  his credit card information.  (*Id*. at ¶ 7c.)  The same screen stated that: "By creating an Uber

18  account, you agree to the Terms & Conditions and Privacy Policy."  The words "Terms &

19  Conditions and Privacy Policy" were called out in bolded text and distinguished by a rectangular

20  box that corresponded to a clickable button.  (*Id*.)  Thus:

21

22

23

24

25

26

27      _____

      [3] To the extent Plaintiff is suing over transactions on someone else's account, he does not

28  have  standing to assert his claims.  For purposes of this Memorandum, and to avoid confusion,
    we will use the singular term "Plaintiff" to refer to both "Michael Cordas" and "Caleb Cordas."



(*Id.* at Exh. A.)

By clicking on the "Terms & Conditions and Privacy Policy" button, the registrant is taken to a screen that contains additional "clickable" buttons, one entitled "Terms & Conditions," and another entitled "Privacy Policy," each of which displayed a copy of the respective terms when clicked. (*Id.* at ¶ 7c.) To complete the Uber App registration process and create an Uber account, Plaintiff then clicked the "DONE" button, which was enabled after he entered his credit card information. (*Id.*) Plaintiff could not have created the account without agreeing to Uber's Terms and Conditions, including the Arbitration Agreement. (*Id.* at ¶ 7d.)

**B.     Plaintiff Agreed to Arbitrate His Claims.**

Plaintiff unequivocally agreed to Uber's Terms and Conditions. (*See* Llaguno Decl., Exh. A.) Plaintiff completed all steps necessary to register for Uber's services, including creating an account to affirm his agreement to the Terms & Conditions. (ECF No. 1, ¶ 24; Brauchli Decl. ¶¶

5, 7.)  Pursuant to its Terms and Conditions, Uber has provided Plaintiff with access to its

services, and Plaintiff has accessed those services, taking trips on more than 20 occasions from

the time he created his account through July 2016.  (Llaguno Decl. at ¶ 5.)

The first section of the applicable Terms and Conditions confirms that a registrant's

"access and use of the Services constitutes [his/her] agreement to be bound by these Terms" and

"establishes a contractual relationship between [the registrant] and Uber."  (*Id*., Exh. A at § 1.)

Under these Terms and Conditions, any "prior agreements or arrangements" between Plaintiff and

Uber were "expressly supersede[d]."  (*Id*.)   The sixth section in the relevant Terms, titled

"Dispute Resolution," states in relevant part:

> ARBITRATION. **You agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services** (collectively, *"Disputes"*)[4] **will be settled by binding arbitration between you and Uber**, except that each party retains the right to bring an individual action in small claims court and the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights. **You acknowledge and agree that you and Uber are each waiving the right to a trial by jury or to participate as a plaintiff or class in any purported class or representative proceeding.** Further, unless both you and Uber otherwise agree in writing, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of any class or representative proceeding.

(*Id*. at § 6 (emphases added).)  The provision also states that the American Arbitration

Association ("AAA") will oversee any dispute, and explains how users can review the applicable

arbitration rules:

> ARBITRATION RULES AND GOVERNING LAW. The arbitration will be administered by the American Arbitration Association (*"AAA"*) in accordance with the Commercial

---

[4] The term "Service" is defined in the Terms and Conditions as the access by the user "of applications, websites, content, products, and services (the '*Services*') made available … by Uber USA, LLC and its subsidiaries and affiliates (collectively, '*Uber*'). . . . Your access and use of the Services constitutes your agreement to be bound by these Terms, which establishes a contractual relationship between you and Uber. . . . The Services include a technology platform that enables users of Uber's mobile applications or websites (each, an '*Application*') to arrange and schedule transportation and/or logistics services with third party providers of such services . . . ." (Llaguno Decl., Exh. A at §§ 1-2.)

1
2
3
4

> Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the *"AAA Rules"*) then in effect, except as modified by this "Dispute Resolution" section.  (The AAA Rules are available at www.adr.org/arb_med or by calling the AAA at 1-800-778-7879.)   The Federal Arbitration Act will govern the interpretation and enforcement of this Section.

5
(*Id.*)

6
The Arbitration Agreement permits users to arbitrate in their home counties, and allows

7
for recovery of attorneys' fees only by users, not Uber:

8
9

> ARBITRATION LOCATION AND PROCEDURE. Unless you and Uber otherwise agree, the arbitration will be conducted in the county where you reside. . . .

10
11
12

> ARBITRATOR'S DECISION . . .  If you prevail in arbitration you will be entitled to an award of attorneys' fees and expenses, to the extent provided under applicable law.   Uber will not seek, and hereby waives all rights Uber may have under applicable law to recover, attorneys' fees and expenses if Uber prevails in arbitration.

13
14

(*Id.*)  Uber also accepts the burden of paying *all* filing, administrative and arbitrator fees for non-frivolous claims:

15
16
17
18

> FEES. Your responsibility to pay any AAA filing, administrative and arbitrator fees will be solely as set forth in the AAA Rules. However, if your claim for damages does not exceed $75,000, Uber will pay all such fees unless the arbitrator finds that either the substance of your claim or the relief sought in your Demand for Arbitration was frivolous or was brought for an improper purpose[.]

19
(*Id.*)  The Arbitration Agreement clearly and conspicuously delineates the waivers of the parties,

20
including the waiver of any right to prosecute a class or representative action, and the numerous

21
protections favorable to the user.  (*Id.*)  Finally, payment for use of Uber's services and the

22
assessment of cancellation fees are governed by the "Payment" section of the Terms and

23
Conditions, which provides in relevant part:

24
25
26
27
28

> You understand that use of the Services may result in charges to you for the services or goods you receive from a Third Party Provider (*"Charges"*). After you have received services or goods obtained through your use of the Service, Uber will facilitate your payment of the applicable Charges on behalf of the Third Party Provider, as such Third Party Provider's limited payment collection agent. . . . using the preferred payment method designated in your Account, and will send you a receipt by email. . . . **You may elect to cancel your request for services or goods from a Third Party**

1

**Provider at any time prior to such Third Party Provider's arrival, in which case you may be charged a cancellation fee.**

2

3

(Llaguno Decl., Exh. A at § 4 (emphasis added).) [5]

4

    **C.**    **Plaintiff Ignored His Arbitration Agreement and Filed Suit.**

5

    All of Plaintiff's claims are based on his allegations that he was incorrectly charged three

6

cancellation fees for services requested through the Uber App on July 28, 2015, February 1, 2016,

7

and May 21, 2016.  (ECF No. 1, ¶¶ 24-50.)  All of these alleged charges were incurred after

8

Plaintiff agreed to the Arbitration Agreement on July 25, 2015 and are governed by that

9

Agreement.  As discussed below, this is precisely the sort of claim encompassed by the

10

Arbitration Agreement because the Terms and Conditions govern Plaintiff's use of Uber's

11

services as well as the assessment of any cancellation fees on user accounts.  (Llaguno Decl.,

12

Exh. A, § 6.)  Despite consenting to the Arbitration Agreement and binding class action waiver,

13

Plaintiff filed this putative class action lawsuit in violation of the Arbitration Agreement.

14

**III.**    **LEGAL STANDARD**

15

    The Federal Arbitration Act ("FAA") reflects a liberal federal policy favoring arbitration,

16

and requires that arbitration agreements be rigorously enforced.  *See AT&T Mobility LLC v.*

17

*Concepcion*, 563 U.S. 333, 339 (2011) ("courts must place arbitration agreements on an equal

18

footing with other contracts").  "[T]he FAA's purpose is to give preference (instead of mere

19

equality) to arbitration provisions."  *Mortensen v. Bresnan Commc'ns LLC*, 722 F.3d 1151, 1160

20

(9th Cir. 2013).  "As arbitration is favored, those parties challenging the enforceability of an

21

arbitration agreement bear the burden of proving that the provision is unenforceable."  *Id.* at 1157

22

(citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)).

23

    The FAA provides that contractual arbitration agreements "shall be valid, irrevocable, and

24

enforceable, save upon such grounds as exist at law or in equity for the revocation of any

25

26

       [5] On January 2, 2016, Uber amended its Terms and Conditions, and that version remains in effect today.  (Llaguno Decl., ¶ 4, Exh. B.)  Those Terms and Conditions were in effect at the time that Uber allegedly charged a cancellation fee to Plaintiff's account on or about May 21, 2016.  (ECF No. 1, ¶¶ 42-50.)  The relevant portions of the Terms and Conditions, including the Arbitration Agreement, are nearly identical to the version that Plaintiff agreed to, and therefore the result of the analysis here would be the same under either version.  (Llaguno Decl., Exh. B.)

27

28

contract." 9 U.S.C. § 2.  A court must compel arbitration if: the transaction involves interstate commerce and (1) a written arbitration agreement exists; and (2) the agreement encompasses the dispute at issue.  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

## IV.     PLAINTIFF MUST INDIVIDUALLY ARBITRATE HIS CLAIMS

### A.     The FAA Governs the Agreement.

The enforceability of the arbitration clause is governed by the FAA.  The Arbitration Agreement itself provides that "[t]he Federal Arbitration Act will govern the interpretation and enforcement of this Section." (Llaguno Decl., Exh. A, § 6.)  Thus, the parties clearly intended the FAA to apply.

In addition, the FAA "governs the enforceability of arbitration agreements in contracts involving interstate commerce."  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274-77 (1995) (interpreting the FAA's "involving commerce" provision as broadly as the phrase "affecting commerce"; the FAA should be applied with the full reach of Congress' powers under the Commerce Clause).

Here, the transactions at issue involved interstate commerce.  When registering to use Uber's services, Plaintiff agreed to Uber's Terms and Conditions.  (Brauchli Decl., ¶¶ 5-7.)  The Terms and Conditions grant users certain authorization to use the Uber App.  (Llaguno Decl., Exh. A, § 2.)  Where, as here, the underlying transactions involve the use of Internet technologies to transmit user requests across a network of independent drivers in over 100 cities across the United States, the "involving commerce" requirement has been met.  *See Cullinane*, 2016 WL 3751652, at *4 (applying FAA to Uber's user arbitration agreement to compel arbitration); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (applying the FAA to a dispute involving internet commerce); *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ("the Internet is an instrumentality and channel of interstate commerce") (internal quotation marks and citation omitted); *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-58 (2003) (finding requisite commerce for FAA coverage even when individual transaction did not have "any

specific effect upon interstate commerce" because the defendant engaged in business of the type at issue in multiple states) (internal quotation marks and citation omitted).

The FAA controls.  Under the FAA, the Court should enforce the arbitration agreement.

**B.     Plaintiff Agreed to Arbitrate "Gateway" Arbitrability Issues.**

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principle that arbitration is a matter of contract.  9 U.S.C. § 4.  When parties "clearly and unmistakably" demonstrate their intent to have the arbitrator decide arbitrability, those issues must be referred to the arbitrator.  *Oracle Am., Inc. v. Myriad Grp., A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130-32 (9th Cir. 2015) ("[A] court must enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator."); *accord Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262-63 (5th Cir. 2014) (if the parties have delegated questions of arbitrability to the arbitrator, "whether the Plaintiffs' claims are subject to arbitration must be decided in the first instance by the arbitrator, not a court.").

Here, the parties "clearly and unmistakably" delegated the gateway issue of arbitrability to the arbitrator by incorporating the AAA Commercial Arbitration Rules.  (Llaguno Decl., Exh. A at § 6.)  Specifically, Rule 7(a) of the AAA Rules provides:  "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim[.]"  AAA Commercial Arbitration Rules and Mediation Procedures at R-7(a).[6]

This is "clear and unmistakable" evidence that the parties agreed to delegate gateway

---

[6] The AAA rules can be found at https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004103&revision=latestreleased ) (effective October 1, 2013; last accessed November 17, 2016).

1    questions of arbitrability to the arbitrator.  Recently, in *Mohamed v. Uber Techs., Inc.*, the Ninth

2    Circuit held that a similar provision in Uber's "driver" agreements that delegated to the arbitrator

3    the authority to decide the "enforceability, revocability or validity" of the arbitration provision

4    constituted a "clear and unmistakable" intent to arbitrate arbitrability "under all circumstances."

5    836 F.3d at 1108-10.  Six district courts throughout the country have examined Uber's delegation

6    clauses in its "driver" agreements, and all six have upheld them.  *Micheletti*, 2016 WL 5793799, at

7    *7; *Sena*, 2016 WL 1376445, at *8; *Varon*, 2016 WL 1752835, at *6; *Suarez*, 2016 WL 2348706,

8    at *5; *Bruster*, 2016 WL 2962403, at *3-5; *Lee*, 2016 WL 5417215, at *4.

9        Similarly, in *Brennan*, the parties agreed to incorporate AAA rules, and the Ninth Circuit

10   held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that

11   contracting parties agreed to arbitrate arbitrability."  796 F.3d at 1130; *see also Roszak v. U.S.*

12   *Foodservice, Inc.*, 628 F. App'x 513, 513 (9th Cir. Jan. 6, 2016) ("[T]he parties incorporated the

13   [AAA] rules into their agreement and therefore agreed to arbitrate the question of arbitrability.").

14       The Ninth Circuit is not alone.  The First, Second, Fifth, Eighth, Eleventh, District of

15   Columbia, and Federal Circuits all hold "that incorporation of the AAA rules constitutes clear and

16   unmistakable evidence of the parties' intent" to "arbitrate arbitrability."  *Brennan*, 796 F.3d at

17   1130-31 (citing cases); *see also Crook v. Wyndham Vacation Ownership, Inc*., No. 13-CV-03669-

18   WHO, 2013 WL 11275036, at *5 (N.D. Cal. Nov. 8, 2013) ("Virtually every circuit to have

19   considered the issue has determined that incorporation of the [AAA] rules constitutes clear and

20   unmistakable evidence that the parties agreed to arbitrate arbitrability") (quoting *Oracle*, 724 F.3d

21   at 1074).

22       California authorities compel the same result.  By incorporating AAA rules, "the parties

23   clearly evidenced their intention to accord the arbitrator the authority to determine issues of

24   arbitrability."  *Rodriguez v. Am. Techs., Inc.*, 136 Cal. App. 4th 1110, 1123 (2006); *accord Dream*

25   *Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 557 (2004) (incorporation of AAA rules

26   deemed "clear and unmistakable evidence of the intent that the arbitrator will decide whether a

27   Contested Claim is arbitrable"); *Greenspan v. LADT, LLC*, 185 Cal. App. 4th 1413, 1442 (2010)

28   ("Thus, 'when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues

of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.'" (citations omitted)).

Plaintiff should be ordered to arbitrate any threshold issues of arbitrability.

**C.      Even if the Court Finds That It, Rather Than The Arbitrator, Should Decide Arbitrability, Both Gateway Issues Are Satisfied.**

Even if the Court were to decline to enforce the parties' agreement to arbitrate gateway questions of arbitrability, the Court should nonetheless compel arbitration.  Where parties have not contracted for arbitrability questions to be determined by the arbitrator, the Court's role under the FAA is limited to determining: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute.  *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002); *Lainer v. Uber*, ECF No. 25 at 3-4.  In conducting these inquiries, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Here, both of these inquiries must be answered in the affirmative.

**1.      Plaintiff Entered into a Valid Agreement to Arbitrate.**

Plaintiff does not dispute that the Terms and Conditions are a binding contract.  Indeed, they are the basis of his breach of contract claim.  (ECF No. 1, ¶¶ 103-110.)  The first gateway issue is whether the parties entered into the Arbitration Agreement, which was contained within the Terms and Conditions.  Clearly, they did.

In *Cullinane v. Uber*, the federal court in Massachusetts examined a virtually identical "click-through" acceptance in a purported class action brought by an Uber rider and found that the plaintiff had entered into a valid agreement to arbitrate the disputes.  2016 WL 3751652, at *3-8 ("The language surrounding the button leading to the Agreement is unambiguous in alerting the user that creating an account will bind him to the agreement").  Plaintiff here likewise gave his assent by affirmatively taking steps to "create an Uber account" and then took several trips using the Uber App.  (Brauchli Decl., ¶ 7); *see also Lainer v. Uber*, ECF No. 25 at 6-7 (compelling to individual arbitration the claims of an Uber rider based on an identical arbitration

provision).

The Terms and Conditions are "governed by and construed in accordance with the laws of the State of California, U.S.A."  (Llaguno Decl., Exh. A, § 7.)  Applying California law, mutual assent to contract "may be manifested by written or spoken words, or by conduct," *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999), and acceptance of contract terms may be implied through action or inaction.  *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991).  Thus, "an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains." *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 992 (1972).

Customers are placed on notice of the terms to which they are assenting when they are provided an opportunity to review and confirm their agreement with the Terms and Conditions. Courts routinely enforce online agreements where users' conduct indicates their consent to hyperlinked terms of service.  *See, e.g.*, *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908 (N.D. Cal. 2011) (user bound by arbitration provision because he was told that, "By using YoVille, you also agree to the YoVille [hyperlink] Terms of Service" and the user proceeded)[7]; *see also Selden v. Airbnb, Inc.*, No. 16-cv-00933 (CRC), 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016) (user bound by arbitration provision because he was told that "By signing up, I agree to Airbnb's [hyperlink] Terms of Service" and the user proceeded to sign up); *Crawford v. Beachbody, LLC*, No. 14-CV-1583 GPC, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (online customer who placed order was bound by contract terms when website stated that "By clicking Place Order below, you are agreeing that you have read and understand the Beachbody Purchase Terms and Conditions," which were hyperlinked on the same webpage); *Nicosia v. Amazon.com, Inc.*, No. 14-CV-4513 (SLT) (MDG), 2015 WL 500180, at *5 (E.D.N.Y. Feb. 4, 2015) (online customer was bound by contract terms where website stated that, "By placing your order, you agree to Amazon.com's privacy notice and conditions of use," which were reachable

---

[7] It is sufficient to "requir[e] a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button" as long as the user has "access to the terms of service."  *Id*. at 912.

by a hyperlink); *Starke v. Gilt Groupe, Inc.*, No. 13-CIV-5497 (LLS), 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (enforcing arbitration provision in hyperlinked Terms of Use; plaintiff's "decision to click the 'Shop Now' button represents his assent to [the Terms]."). [8]

This case is no different.  The Uber registration process that Plaintiff completed consists of three basic steps, each confined to a single screen with specific fields to complete.  (Brauchli Decl., ¶¶ 6, 7, Exh. A.)  To complete the registration process and create an Uber account, Plaintiff affirmatively and voluntarily provided Uber with his email address, mobile phone number, and password, created a profile, entered his credit card information, and then affirmatively clicked the "DONE" button, which appeared above a clickable button stating that "[b]y creating an Uber account, you agree to the Terms & Conditions and Privacy Policy."  (*Id.* at ¶ 7c, Exh. A.)  The phrase "Terms & Conditions and Privacy Policy" was bolded and hyperlinked to full copies of each document, giving Plaintiff an opportunity to review those terms.  (*Id.*)  Plaintiff was therefore on notice that by creating his Uber account, he was consenting to the Terms and Conditions, which contain the Arbitration Agreement.

That is true whether he actually read the agreement or not.  *See Chico v. Hilton Worldwide, Inc.*, No. CV 14–5750–JFW, 2014 WL 5088240, at *6 (C.D. Cal. Oct. 7, 2014) ("even if Plaintiff could not understand or even read the Crestline or RIM Arbitration Agreements, the Court concludes that he assented to their terms"); *accord*, *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1137 (N.D. Cal. 2015) (in the context of online transactions, "the terms of the agreement are binding, even if the user did not actually review the agreement," provided that the website put a 'reasonably prudent user on notice of the terms of the contract.'") (citation omitted).

As the court in *Selden v. Airbnb* explained when it enforced an arbitration provision included in Airbnb's hyperlinked terms of service in an iPhone app:

> The act of contracting for consumer services online is now commonplace in the American economy.  Any reasonably-active

---

[8] *See also 5381 Partners LLC v. Shareasale, Inc.*, No. 12-CV-4263 (JFB), 2013 WL 5328324, at *4 (E.D.N.Y. Sept 23, 2013); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837-38 (S.D.N.Y. 2012).

adult consumer will almost certainly appreciate that by signing up for a particular service, he or she is accepting the terms and conditions of the provider. Notifications to that effect—be they check boxes or hyperlinks—abound. To be sure, few people may take time to actually read the user agreements. But ignorance of the precise terms does not mean that consumers are unaware they are entering contracts by signing up for internet-based services.

2016 WL 6476934, at *5.

Plaintiff is bound by the Arbitration Agreement.

### 2. Plaintiff's Claims Are Covered by the Arbitration Agreement.

In deciding if a dispute is covered by the clause, federal courts look to state law governing contract formation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012) ("In determining the rights of parties to enforce an arbitration agreement within the FAA's scope, courts apply state contract law while giving due regard to the federal policy favoring arbitration." (citing *Volt Info. Scis. v. Leland Stanford Jr. Univ.*, 489 U.S. 468, 474 (1989)).

In *Lainer*, the Court found that the claims arising from Uber's alleged solicitation of plaintiff to become a driver were covered by the same Uber "rider" arbitration clause in this case. *Lainer v. Uber*, ECF No. 25 at 6 ("The Court is unpersuaded by Plaintiff's argument that the arbitration agreement does not apply to the instant dispute because it is limited to Defendant's transportation services, as opposed to its alleged employment solicitations.")

Likewise, the Arbitration Agreement here broadly defines the scope of arbitrable disputes to include "**any dispute, claim or controversy arising out of or relating to** these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services . . ." (Llaguno Decl., Exh. A at § 6 [emphasis added].) "The use of the 'relat[ing] to' language is a signal that the scope of the agreement is broad under Ninth Circuit case law and encompasses claims beyond the four corners of the contract." *Delgado v. Progress Fin. Co.*, No. 1:14-cv-00033-LJO-MJS, 2014 WL 1756282, at *5 (E.D. Cal. May 1, 2014); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827 SI, 2011 WL 2650689, at *5 (N.D. Cal. July 6, 2011) ("the language 'related to' must be read broadly" to encompass "matters that, while not arising directly under the contractual relationship, are nevertheless related to it."). In the face of a contract with "relating

to" language, "Plaintiff's claims need only 'touch matters' covered by the contract containing the arbitration provision." *Koyoc v. Progress Fin. Co.*, No. CV 13-09165-RSWL (AGRx), 2014 WL 1878903, at *4 (C.D. Cal. May 9, 2014) (citation omitted).

Plaintiff's claims not only "touch matters" covered by the contract, they fall squarely within the Arbitration Agreement.  Plaintiff alleges that "UBER is an 'on-demand' car service that allows you to request private drivers through applications for iPhone, Android, and other similar devices."  (ECF No. 1, ¶ 10.)  All of Plaintiff's claims are based on allegations that he was incorrectly charged cancellation fees for services he requested through the Uber App.  (*Id.* at ¶¶ 24-50.)  These charges could not have occurred but for Plaintiff's use of Uber's services.  (*See* Llaguno Decl., Exh. A at § 6 ("The Services constitute a technology platform that enables users of Uber's mobile applications . . . to arrange and schedule transportation and/or logistics services with third party providers of such services . . .").  Further, as Plaintiff recognizes (*see, e.g.*, ECF No. 1, ¶ 92), Uber's cancellation-fee policy is indisputably contained in the Terms and Conditions:  "You may elect to cancel your request for Services from a Third Party Provider at any time prior to such Third Party Provider's arrival, in which case you may be charged a cancellation fee."  (Llaguno Decl., Exh. A at § 4.)  Indeed, Plaintiff's claims, including his breach of contract claim, specifically challenge this policy.  (*See, e.g.*, ECF No. 1, ¶¶ 92, 104.)

Thus, this is clearly a "dispute, claim or controversy arising out of or related to these Terms . . . or the use of the Services."  (Llaguno Decl., Exh. A at § 6.)  Because the Terms and Conditions govern Plaintiff's use of Uber's "Services" as well as the assessment of cancellation fees, Plaintiff's claims "aris[e] out of or relat[e] to" to the Terms and Conditions and are therefore encompassed by the Arbitration Agreement.  (*Id.*); *see, e.g.*, *O.N. Equity Sales Co. v. Steinke*, 504 F. Supp. 2d 913, 916-17 (C.D. Cal. 2007) (investors' claim against broker-dealer for failure to supervise arose in connection with broker-dealer's business for the purposes of NASD arbitration rule); *Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1272-73 (C.D. Cal. 2008) (compelling

1   arbitration of UCL and contract claims where arbitration agreement included broad "arising

2   under" language).[9]

3               **3.      The Arbitration Agreement Is Not Unconscionable.**

4          The party opposing arbitration bears the burden of proving unconscionability.  *Pinnacle*

5   *Museum*, 55 Cal. 4th at 236.  The Complaint does not allege that the Arbitration Agreement is

6   unenforceable, which should end the inquiry, but to the extent the Court considers the issue, there

7   is no unconscionability here.

8          The Court's analysis is limited to whether the *arbitration provision* (as opposed to other

9   contract terms) is unconscionable.  *See Rent-A-Center*, 561 U.S. at 70-71 ("[A] party's challenge

10  to another provision of the contract, or to the contract as a whole, does not prevent a court from

11  enforcing a specific agreement to arbitrate.").  Moreover, "a contract provision is unenforceable

12  due to unconscionability only if it is both procedurally and substantively unconscionable."

13  *Bosinger v. Belden CDT, Inc.*, 358 F. App'x 812, 814 (9th Cir. 2009) (citation omitted).

14         The Arbitration Agreement is not procedurally unconscionable because (1) it is not

15  oppressive and (2) Plaintiff was not surprised by it.  *Pinnacle Museum*, 55 Cal. 4th at 246.

16  Plaintiff had a meaningful choice whether to accept the Terms and Conditions and take advantage

17  of Uber's platform—he could have easily declined those terms and used an alternative means of

18  requesting transportation.  *See Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224,

19  1245 (2007) ("The availability of alternative sources from which to obtain the desired service

20  defeats any claim of oppression, because the consumer has a meaningful choice.").

21         Nor did the provision "surprise" Plaintiff.  The Terms and Conditions containing the

22  Arbitration Agreement were prominently called out and hyperlinked on the account sign-up page

23  and were readily accessible to Plaintiff.  (Brauchli Decl., ¶ 7c, Exh. A.)  Uber "was under no

24

25         [9] Under the FAA, a court must compel arbitration "unless it may be said with positive
    assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted
26  dispute."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation
    omitted).  When an arbitration clause contains broad language such as this, the agreement
27  "reaches every dispute between the parties *having a significant relationship to the contract and
    all disputes having their origin or genesis in the contract*."  *Simula, Inc.*, 175 F.3d at 721
28  (emphasis added).

1 obligation to highlight the arbitration clause of its contract, nor was it required to specifically call

2 that clause to [Plaintiff's] attention." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 914

3 (2015). Even so, the Arbitration Agreement is written in plain English and is conspicuously

4 displayed under the bolded heading "**DISPUTE RESOLUTION**"—not "hidden within a prolix

5 printed form." (Llaguno Decl., Exh. A, § 6; *Jones v. Wells Fargo Bank*, 112 Cal. App. 4th 1527,

6 1539 (2003); *see also Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1321 (2005)

7 ("a clear heading in a contract may refute a claim of surprise"); *Estrada v. CleanNet USA, Inc.*,

8 No. C 14-01785 JSW, 2015 WL 833701, at *3 (N.D. Cal. Feb. 24, 2015) (compelling arbitration;

9 finding, *at most*, only a "minimal amount of procedural unconscionability" where "dispute

10 resolution provisions were clearly labeled, with bolded, capitalized section[s]").) Under this

11 bolded heading, the Terms clearly state: "You acknowledge and agree that you and Uber are each

12 waiving the right to a trial by jury or to participate as a plaintiff or class in any purported class

13 action or representative proceeding." (Llaguno Decl., Exh. A, § 6.)

14 The Arbitration Agreement is also not substantively unconscionable. To prove

15 substantive unconscionability, Plaintiff must show that the arbitration clause is "so one-sided as

16 to shock the conscience." *Pinnacle Museum*, 55 Cal. 4th at 246 (internal quotation marks and

17 citation omitted). Far from being one-sided, the Arbitration Agreement is bilateral and safeguards

18 Plaintiff's ability to pursue a small claims action or an individual arbitration. Uber has agreed to

19 pay all of Plaintiff's "filing, administrative and arbitrator fees" for arbitration of non-frivolous

20 claims under $75,000. (Llaguno Decl., Exh. A at § 6.)

21 Plaintiff can also recover attorneys' fees and expenses if he prevails in arbitration; Uber

22 has waived its corresponding right. (Llaguno Decl., Exh. A at § 6.) And, Plaintiff is not faced

23 with significant travel expenses because Uber has agreed to conduct the arbitration in Plaintiff's

24 home county. (*Id.*) If Plaintiff prefers small claims court, he retains his right to choose that

25 forum. (*Id.*) These provisions defeat any claimed unconscionability. *See Ulbrich v.*

26 *Overstock.com, Inc.*, 887 F. Supp. 2d 924, 933-34 (N.D. Cal. 2012) (rejecting unconscionability

27 challenge even where arbitration provision required individuals to share in costs of arbitration, set

28 the arbitration out-of-state, and lacked mutuality in the remedies available to the parties); *see also*

1    *Crook*, 2013 WL 11275036, at *5 (no unconscionability even where the provision required the

2    parties to share arbitration costs and required travel to a forum outside plaintiffs' home county).

3        **D.    The Action Should Be Dismissed or Stayed Pending the Completion of
              Plaintiff's Individual Arbitration.**

4

5        Courts are required to "rigorously enforce agreements to arbitrate." *Dean Witter*

6    *Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).  The FAA "mandates that district courts *shall*

7    direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been

8    signed." *Rep. of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).  Here, Plaintiff

9    entered a valid and binding Arbitration Agreement on July 25, 2015, that covers Plaintiff's

10   claims.  Binding precedent compels the Court to direct Plaintiff to resolve this dispute in

11   individual arbitration.

12       Because Plaintiff must arbitrate his claims or pursue them in small claims court, the Court

13   may dismiss the entire case, including his putative class claims.  *See Lewis v. UBS Fin. Servs.,*

14   *Inc.*, 818 F. Supp. 2d 1161, 1165 (N.D. Cal. 2011).[10]  Dismissal of putative class claims is also

15   proper because Plaintiff agreed to the class action waiver in Uber's Terms and Conditions.  *See*

16   *Concepcion*, 563 U.S. at 344, 352 (enforcing class action waiver in defendant's arbitration

17   agreement because the "principal purpose" of the FAA is to "ensur[e] that private arbitration

18   agreements are enforced according to their terms") (citation omitted); *Dauod v. Ameriprise Fin.*

19   *Servs., Inc.*, No. 10-CV-00302 CJC (MANx), 2011 WL 6961586, at *6 (C.D. Cal. Oct. 12, 2011)

20   (holding class action waiver was enforceable and dismissing action where individual claims were

21   subject to arbitration).  Because all of Plaintiff's claims must be resolved through individual,

22   binding arbitration, this case should be dismissed.

23

24       [10] Other cases endorse dismissal. *See Sheffer v. Samsung Telecomms. Am., LLC*, No. CV-
     13-3466 GW (AJWx), 2014 WL 792124, at *1 (C.D. Cal. Feb. 6, 2014) ("Because the arbitration
25   agreement calls for individual arbitration of all of Plaintiff's claims in this action, Plaintiff's
     class-based claims are dismissed with prejudice."); *Dang v. Samsung Elecs. Co.*, No. 14-CV-
26   00530 LHK, 2015 WL 4735520, at *11 (N.D. Cal. Aug. 10, 2015) (dismissal is appropriate where
     "the arbitration clause [is] broad enough to bar all of the plaintiff's claims") (citation omitted);
27   *Graf v. Match.com, LLC*, No. CV-15-3911 PA (MRWx), 2015 WL 4263957, at *6 (C.D. Cal.
     July 10, 2015) ("Given that all of Plaintiff's claims are subject to arbitration, this [putative class]
28   action is dismissed.") (citation omitted).

1    In the alternative, the Court may stay this case pending the results of individual

2    arbitration.  *See Luchini v. Carmax, Inc.*, No. CV F 12-0417 LJO DLB, 2012 WL 2995483, at

3    *15 (E.D. Cal. July 23, 2012) ("[A] court can properly stay a suit before it if *any* issue in the suit

4    is arbitrable[.]") (citation omitted); *see also Lainer v. Uber*, ECF No. 25 at 7.

5    **V.    CONCLUSION**

6    The Court should order Plaintiff to individually arbitrate all of his claims against Uber and

7    dismiss, or in the alternative, stay, Plaintiff's claims pending the outcome of arbitration.

8

9    Dated:  November 18, 2016              WILLIAM L. STERN
                                            TIFFANY CHEUNG
10                                          CLAUDIA M. VETESI
                                            LUCIA X. ROIBAL
11                                          MORRISON & FOERSTER LLP

12

13                                  By:   */s/ Tiffany Cheung*
                                          TIFFANY CHEUNG

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28