1   WILLIAM L. STERN (CA SBN 96105)
    WStern@mofo.com
2   TIFFANY CHEUNG (CA SBN 211497)
    TCheung@mofo.com
3   CLAUDIA M. VETESI (CA SBN 233485)
    CVetesi@mofo.com
4   LUCIA X. ROIBAL (CA SBN 306721)
    LRoibal@mofo.com
5   MORRISON & FOERSTER LLP
    425 Market Street
6   San Francisco, California  94105-2482
    Telephone:    415.268.7000
7   Facsimile:    415.268.7522

8   Attorneys for Defendant
    UBER TECHNOLOGIES, INC.

9

10

11                      UNITED STATES DISTRICT COURT

                      NORTHERN DISTRICT OF CALIFORNIA
12

13

14  MICHAEL CORDAS, individually and on       Case No. 3:16-cv-04065-RS
    behalf of all others similarly situated,
15                                            **DEFENDANT UBER TECHNOLOGIES,**
                     Plaintiff,               **INC.'S REPLY IN SUPPORT OF MOTION**
16                                            **TO COMPEL ARBITRATION AND**
           vs.                                **DISMISS OR STAY LITIGATION**
17
    UBER TECHNOLOGIES, INC.,                  Date:    January 5, 2017
18                                            Time:    1:30 p.m.
                     Defendant.
19                                            Hon. Richard Seeborg
                                              Courtroom 3
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

I.      INTRODUCTION ............................................................................................. 1

II.     THE TERMS AND CONDITIONS ARE A BINDING CONTRACT. ........................... 2

        A.     Plaintiff Admits That the Parties Agreed to a Contract. ........................... 2

        B.     Plaintiff Assented to the Terms and Conditions When He Created
               an Uber Account. ..................................................................................... 2

        C.     Uber's Terms and Conditions Are Not a Browsewrap Agreement. ........... 6

III.    PLAINTIFF AGREED TO HAVE THE ARBITRATOR DECIDE THE
        THRESHOLD ISSUES OF ARBITRABILITY. ..................................................... 8

IV.     EVEN IF THE COURT DETERMINES ARBITRABILITY, THE
        ARBITRATION AGREEMENT CLEARLY COVERS PLAINTIFF'S
        CLAIMS AND IS NOT UNCONSCIONABLE. ...................................................... 10

        A.     Plaintiff's Claims Are Covered by the Arbitration Agreement. ................ 10

        B.     Plaintiff Cannot Show That the Arbitration Agreement Is
               Unconscionable. ....................................................................................... 11

               1.     The Arbitration Agreement Is Neither Oppressive Nor
                      Surprising. ..................................................................................... 11

               2.     The Arbitration Agreement Is Not Substantively
                      Unconscionable. ............................................................................. 12

V.      CONCLUSION ............................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al-Thani v. Wells Fargo & Co.*,
No. C 08-1745 CW, 2009 WL 55442 (N.D. Cal. Jan. 7, 2009)................................................3

*Am. Title Ins. Co. v. Lacelaw Corp.*,
861 F.2d 224 (9th Cir. 1988)...................................................................................................2

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)...........................................................................................10, 11, 13, 14

*Baltazar v. Forever 21, Inc.*,
62 Cal. 4th 1237 (2016) ........................................................................................................14

*Beard v. Santander Consumer USA, Inc.*,
No. 1:11-cv-11-815 LJO–BAM 2012, WL 1292576 (E.D. Cal. Apr. 16, 2012) ...................13

*Be In, Inc. v. Google, Inc.*,
No. 12-cv-03373-LHK, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013).......................................7

*Belton v. Comcast Cable Holdings, LLC*,
151 Cal. App. 4th 1224 (2007) .............................................................................................11

*Binder v. Aetna Life Ins. Co.*,
75 Cal. App. 4th 832 (1999) ...................................................................................................6

*Blau v. AT&T Mobility*,
No. C 11-00541 CRB, 2012 WL 10546 (N.D. Cal. Jan. 3, 2012) ........................................3, 4

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015)............................................................................................9, 10

*Cisneros v. Am. Gen. Fin. Servs., Inc.*,
No. C11-02869 CRB, 2012 WL 3025913 (N.D. Cal. July 24, 2012).....................................13

*Cullinane v. Uber Techs., Inc.*,
No. 14-14750-DPW, 2016 WL 3751652 (D. Mass. July 11, 2016) ......................................7, 8

*Davis v. Gazillion, Inc.*,
No. C 10-743 RS, 2010 WL 2740002 (N.D. Cal. July 12, 2010)...........................................15

*Feldman v. Google, Inc.*,
513 F. Supp. 2d 229 (E.D. Pa. 2007) ......................................................................................5

*Fteja v. Facebook Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ............................................................5, 7

*Garcia v. Enter. Holdings, Inc.*,
    78 F. Supp. 3d 1125 (N.D. Cal. 2015) ...........................................................4, 8

*Grosvenor v. Qwest Corp.*,
    854 F. Supp. 2d 1021 (D. Colo. 2012) ..............................................................14

*Halperin v. Raville*,
    176 Cal. App. 3d 765 (1986).................................................................................2

*Hansen v. United States*,
    7 F.3d 137 (9th Cir. 1993).....................................................................................6

*In re Zappos.com, Inc. Customer Data Sec. Breach Litig.*,
    893 F. Supp. 2d 1058 (D. Nev. 2012) ................................................................14

*Jones v. Wells Fargo Bank*,
    112 Cal. App. 4th 1527 (2003) ...........................................................................12

*Khraibut v. Chahal*,
    No. C15-04463 CRB, 2016 U.S. Dist. LEXIS 35514 (N.D. Cal. Mar. 18, 2016) ....................9

*Lainer v. Uber Techs., Inc.*,
    No. 2:15-cv-09925-BRO-MRW (C.D. Cal. May 11, 2016) ...............................7, 8

*Lewis v. YouTube, LLC*,
    244 Cal. App. 4th 118 (2015) .............................................................................14

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
    89 Cal. App. 4th 1042 (2001) ...........................................................................4, 8

*Marquez v. Brookdale Senior Living*,
    No. 13-cv-05320-RS, 2014 WL 1379645 (N.D. Cal. Apr. 4, 2014).......................15

*McCabe v. Dell, Inc.*,
    No. CV 06-7811-RGK, 2007 WL 1434972 (C.D. Cal. Apr. 12, 2007)...................11

*Merkin v. Vonage Am. Inc.*,
    No. 2:13-cv-08026-CAS(MRWx), 2014 U.S. Dist. LEXIS 14055 (C.D. Cal.
    Feb. 3, 2014) ......................................................................................................12

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014)...........................................................................6, 7

*Oracle America, Inc. v. Myriad Group A.G.*,
    724 F.3d 1069 (9th Cir. 2013).............................................................................9

*Peng v. First Republic Bank*,
    219 Cal. App. 4th 1462 (2013) ............................................................................................11, 12

*Pinnacle Museum Towers Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
    55 Cal. 4th 223 (2012) .................................................................................................................15

*Pope v. Sonatype, Inc.*,
    No. 5:15-CV-00956-RMW, 2015 WL 2174033 (N.D. Cal. May 8, 2015).........................13, 14

*Ruhe v. Masimo Corp.*,
    No. SACV 11–00734–CJC, 2011 WL 4442790 (C.D. Cal. Sept. 16, 2011) ...........................13

*Sanchez v. Valencia Holding Co., LLC*,
    61 Cal. 4th 899 (2015) ...................................................................................................4, 8, 12, 14

*Tiri v. Lucky Chances, Inc.*,
    226 Cal. App. 4th 231 (2014) ....................................................................................................11

*Tompkins v. 23andMe, Inc.*,
    No. 5:13-CV-05682-LHK, 2014 U.S. Dist. LEXIS 88068 (N.D. Cal. June 25,
    2014) ................................................................................................................................... passim

*Uptown Drug Co. v. CVS Caremark Corp.*,
    962 F. Supp. 2d 1172 (N.D. Cal. 2013) .....................................................................................12

*Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*,
    995 F. Supp. 1060 (D. Ariz. 1997)...............................................................................................2

*Wolschlager v. Fidelity Nat'l Title Ins. Co.*,
    111 Cal. App. 4th 784 (2003) ......................................................................................................9

*Zenelaj v. Handybook Inc.*,
    82 F. Supp. 3d 968 (N.D. Cal. 2015) ...........................................................................................9

**Statutes**

Cal. Civ. Code § 1670.5 .....................................................................................................................15

**Rules**

AAA Commercial Arbitration Rules, 7(a) ...................................................................................8, 9

Civil L.R. 7-3(a) ....................................................................................................................................3

## I.     INTRODUCTION

Plaintiff admits in his Complaint that the parties agreed to a contract.  He also admits in his Complaint, repeats in his Opposition brief, and confirms in his supporting declaration, that he downloaded the Uber App and created an Uber rider account in July 2015 and thereafter utilized Uber's services.  Despite these admissions, Plaintiff argues that he did not agree to Uber's Terms and Conditions because they allegedly did not display on his phone, and he was not required to view the Terms or affirmatively consent to them by clicking "I Agree."  But binding authority holds that a contract is formed where, as here, consumers are placed on notice that their completion of a registration process constitutes consent to the applicable Terms.

Plaintiff next attempts to ignore his agreement to delegate arbitrability issues to the arbitrator, claiming that he is not bound by the delegation clause because he is not a "sophisticated party."  But that is not the law.  As the courts in this District and around the country have repeatedly held, where the parties "clearly and unmistakably" delegate the issue of arbitrability to the arbitrator by incorporating the AAA Commercial Arbitration Rules, the court must enforce that agreement, regardless of the sophistication of the parties.  Because the parties entered into a binding contract with a delegation clause, the Court need go no further.  It is for the arbitrator to decide whether Plaintiff's claims are covered by a valid Arbitration Agreement.

In any event, there is no question here that Plaintiff's claims fall squarely within the Arbitration Agreement.  Further, the Arbitration Agreement is not only conscionable, it is replete with pro-consumer provisions.  Plaintiff selectively ignores these provisions and cherry picks isolated clauses that are taken out of context, while relying on outdated legal authority.  Even assuming that Plaintiff could identify any provisions that might be severed, this does not establish that the Arbitration Agreement as a whole is so unconscionable that it shocks the conscience, as required.  On the contrary, viewed as a whole, the Agreement is both fair and reasonable.

Accordingly, the Court should grant Uber's motion and compel arbitration of Plaintiff's claims on an individual basis.

**II.     THE TERMS AND CONDITIONS ARE A BINDING CONTRACT.**

**A.     Plaintiff Admits That the Parties Agreed to a Contract.**

Plaintiff devotes a substantial portion of his Opposition (along with his objections to the Declaration of Christopher Brauchli submitted with Uber's Opening Brief) to dispute his assent to Uber's Terms and Conditions.  (Opp. at 6-13.)  But Plaintiff admits in the Complaint that the parties have a contract—indeed, it is the basis of his breach of contract and breach of the implied covenant of good faith and fair dealing claims.  (*See* ECF No. 1 (Complaint), ¶¶ 103-110; 147-151.)  He also admits that he created an Uber account and utilized Uber's services (which he again admits in his Opposition and declaration).  (*Id.* ¶¶ 24-50; Opp. at 1-3; ECF No. 29-1, ¶¶ 2, 5.)  These are binding judicial admissions that the parties agreed to a contract.  *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("A statement in a complaint, answer or pretrial order is a judicial admission, as is a failure in an answer to deny an allegation.").

Plaintiff cannot rely on the parties' contract as a basis for relief in his Complaint, while attempting to avoid arbitration by denying that any such contract exists.  *See, e.g.*, *Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*, 995 F. Supp. 1060, 1065 (D. Ariz. 1997) (holding that plaintiff was barred from arguing "that the terms in the Handbook create a contract and that Phelps Dodge breached the terms of that contract while arguing, on the other hand, that the arbitration clause contained in the Handbook is unenforceable for lack of mutual assent"); *Halperin v. Raville*, 176 Cal. App. 3d 765, 772 (1986) ("No person can be permitted to adopt that part of an entire transaction which is beneficial to him/her, and then reject its burdens.").  Accordingly, Plaintiff's contention that no contract formed between the parties should be rejected.

**B.     Plaintiff Assented to the Terms and Conditions When He Created an Uber Account.**

In any event, as shown in the Opening Brief and the accompanying declaration of Christopher Brauchli (the "Brauchli Declaration"), Plaintiff agreed to the Terms and Conditions when he created his Uber account.  (Open. Br. at 11-14.)  There is no dispute that he downloaded the Uber App and created an Uber rider account in July 2015 and thereafter benefited from

1    Uber's services.  (ECF No. 1, ¶¶ 24-50; Opp. at 1-3; ECF No. 29-1, ¶¶ 2, 5.)  Nor is there a

2    dispute that, as part of the account sign-up process, he affirmatively clicked the "DONE" button

3    after he entered his payment information.  (Opp. at 13, n.12.)  On this screen, directly below the

4    "DONE" button, Uber informed him that: "By creating an Uber account, you agree to the Terms

5    & Conditions and Privacy Policy."  (Brauchli Decl. at ¶ 7c, Exh. A.)

6         Plaintiff does not offer any specific evidence contradicting this fact.  Instead, Plaintiff

7    quibbles with the Brauchli Declaration, attempting to avoid the facts through the distraction of

8    18 pages of evidentiary objections and a self-serving declaration that contains no factual support.

9    Plaintiff's efforts should be rejected.

10        **First**, Plaintiff's objections violate the Local Rules.  All evidentiary objections "must be

11   contained within the brief or memorandum," not in a separate 18-page document.  *See* Civil L.R.

12   7-3(a).  The Court should strike Plaintiff's objections on this basis.

13        **Second**, Plaintiff's challenges based on his limited recollection and the sufficiency of

14   Uber's evidence are irrelevant.  Plaintiff admits that he created an Uber account, but claims he did

15   not see the hyperlink on the account registration screen that conspicuously disclosed that "***By***

16   ***creating an Uber account***, you agree to the Terms & Conditions and Privacy Policy."  (ECF

17   No. 29-1, ¶ 3; Brauchli Decl. at ¶ 7c, Exh. A.) (emphasis added).  Plaintiff's failure to recall

18   seeing the hyperlink cannot negate his assent.  "'[M]utual assent to contract is based upon

19   *objective and outward manifestations* of the parties; a party's subjective intent, or subjective

20   consent, therefore is irrelevant.'"  *Al-Thani v. Wells Fargo & Co.*, No. C 08-1745 CW, 2009 WL

21   55442, at *6 (N.D. Cal. Jan. 7, 2009) (emphasis added) (quoting *Stewart v. Preston Pipeline Inc.*,

22   134 Cal. App. 4th 1565, 1587 (2005)); *see also Blau v. AT&T Mobility*, No. C 11-00541 CRB,

23   2012 WL 10546, at *4 (N.D. Cal. Jan. 3, 2012) (enforcing terms of service: "if a party could get

24   out of a contract by arguing that he did not recall making it, contracts would be meaningless").

25   The evidence shows that Plaintiff could not request rides without completing all the steps in the

26   sign-up process and affirmatively clicking "DONE" to create his account.  (Brauchli Decl. at

27   ¶ 7d; Reply Declaration of Christopher Brauchli ("Brauchli Reply Decl.") at ¶ 7.)  This objective

28   indication of assent to the Terms binds Plaintiff as a matter of law.

1         Plaintiff's failure to read or recall the Terms & Conditions is not a basis for invalidating

2 his contractual obligations.  Consumers cannot void contracts simply by claiming a lack of

3 memory or by choosing not to read contractual terms.  *See, e.g.*, *Garcia v. Enter. Holdings, Inc*.,

4 78 F. Supp. 3d 1125, 1137 (N.D. Cal. 2015) (in the context of online transactions, "the terms of

5 the agreement are binding, even if the user did not actually review the agreement," provided that

6 the website put a 'reasonably prudent user on notice of the terms of the contract.'"); *Marin*

7 *Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049

8 (2001) ("A party cannot avoid the terms of a contract on the ground that he or she failed to read it

9 before signing."); *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 915 (2015) ("[E]ven

10 when a customer is assured it is not necessary to read a standard form contract with an arbitration

11 clause, it is generally unreasonable, in reliance on such assurances, to neglect to read a written

12 agreement before signing it." (citation omitted)).

13         Because Plaintiff undisputedly created an Uber account, his objections based on the

14 supposed absence of "personal knowledge" regarding his account creation fail as a matter of

15 logic.  In *Tompkins v. 23andMe, Inc.*, a case frequently cited by Plaintiff, the court considered and

16 rejected that exact argument.  Like Plaintiff here, the *Tompkins* plaintiffs disputed 23andMe's

17 evidence regarding their individual account registrations, arguing that 23andMe had not

18 "submitted competent evidence that plaintiffs ever agreed to the Terms of Service."  No. 5:13-

19 CV-05682-LHK, 2014 U.S. Dist. LEXIS 88068, at *25 (N.D. Cal. June 25, 2014), *aff'd*, 834 F.3d

20 1019 (9th Cir. 2016).  The court disagreed, citing 23andMe's evidence that users could not have

21 created an account without clicking a button that affirmed their assent to the Terms of Service.

22 *Id.* at *26.  Because the plaintiffs admitted that they created an account, they could not "credibly

23 claim ignorance as to whether they actually clicked the appropriate boxes."  *Id.* at *26-*27.

24         Plaintiff's arguments here should be rejected for the same reasons.  Like 23andMe, Uber

25 has submitted evidence that Plaintiff could not have created an account on the Uber App and

26 utilized Uber's services without completing all of the steps in the registration process, including

27 hitting the "DONE" button on the screen that contained the hyperlink to Uber's Terms and

28 Conditions.  (Brauchli Decl. at ¶ 7d; Brauchli Reply Decl. at ¶ 7.)  Because Plaintiff admits that

1   he created an Uber account and requested rides on the Uber App, Plaintiff cannot credibly deny

2   that he assented to the Terms and Conditions. *See Tompkins*, 2014 U.S. Dist. LEXIS 88068, at

3   *27; *see also Fteja v. Facebook Inc.*, 841 F. Supp. 2d 829, 834 (S.D.N.Y. 2012) (Because

4   creating a Facebook account required the plaintiff to "click[] through the registration page where

5   they acknowledge they have read and agreed to Facebook's terms of use," the plaintiff's

6   assertions that "[t]here is no proof that [he personally] agreed to" those terms fails "[a]s a matter

7   of logic."); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 237 (E.D. Pa. 2007) ("If the user did

8   not agree to all of the terms, he could not have activated his account, placed ads, or incurred

9   charges.").

10       **Third**, Plaintiff's objections are meritless.  Uber submitted the testimony of Mr. Brauchli,

11   an experienced engineer with personal knowledge of and familiarity with Uber's account

12   registration records, which are kept in the normal course of Uber's business.  (Brauchli Decl. ¶ 5;

13   Brauchli Reply Decl. ¶¶ 3-4.)  Based on his knowledge and familiarity, Mr. Brauchli verified,

14   among other things, Plaintiff's account creation date, the rides Plaintiff requested, and the Uber

15   App sign-up process that all iPhone users had to complete to create an account and utilize Uber's

16   services at the time Plaintiff signed up.  (Brauchli Decl. ¶¶ 5-7; Brauchli Reply Decl. ¶¶ 3-4.)

17   That is admissible and competent evidence of Plaintiff's assent to the parties' contract.

18       Plaintiff objects that Mr. Brauchli does not account for Plaintiff's specific phone settings,

19   including his iPhone model, his iPhone operating system, and his phone's "potential operational

20   or personal settings." (ECF No. 30; Opp. at 8.)  But Plaintiff does not—and cannot—explain how

21   any of these details matter.  Plaintiff created his Uber account using an iPhone 6.  (Brauchli Reply

22   Decl. ¶ 5.)  The screenshots attached as Exhibit A to Mr. Brauchli's declaration reflect what a

23   user would have seen on an iPhone 6 and the version of the Uber App that was in effect on or

24   around July 25, 2015.  (*Id.*)  The Uber App sign-up process would have been the same regardless

25   of his phone's operating system or his phone's personal settings.  (Brauchli Reply Decl. ¶ 5.)

26   Plaintiff also claims that the screenshots attached as Exhibit A to Mr. Brauchli's declaration are

27   inaccurate and "different than what I was presented with," but he does not provide any

28

1    information about what he allegedly saw when he admittedly created an account.[1]  Nor does he

2    explain how it was supposedly "different."  (Opp. at 8-9; ECF No. 29-1 at ¶¶ 8-9.)  Faced with

3    Mr. Brauchli's testimony based on Uber's contemporaneously-created records, Plaintiff offers

4    only a self-serving declaration that simply denies everything Mr. Brauchli says and contains no

5    facts supporting those denials.  This declaration cannot create a genuine issue of fact regarding

6    his assent to the parties' contract.  *Cf. Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993)

7    ("When the nonmoving party relies only on its own affidavits to oppose summary judgment, it

8    cannot rely on conclusory allegations unsupported by factual data to create an issue of material

9    fact.").

10         **C.     Uber's Terms and Conditions Are Not a Browsewrap Agreement.**

11              Plaintiff next argues that Uber's Terms and Conditions are an unenforceable

12    "browsewrap" agreement.  (Opp. at 10-13.)  Plaintiff is wrong.  As shown in the Opening Brief,

13    Uber's sign-up process is an established and enforceable method of online contract formation.

14    (Open. Br. at 11-14.)

15              Mutual assent is the touchstone of contract formation under California law.  *Binder v.*

16    *Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999).  In the context of online transactions, this

17    requirement is generally satisfied when a website "user is required to affirmatively acknowledge

18    the agreement before proceeding with use of the website."  *Nguyen v. Barnes & Noble Inc.*,

19    763 F.3d 1171, 1176 (9th Cir. 2014) (emphasis added) (citing *Fteja*, 841 F. Supp. 2d at 838-40).

20    In *Nguyen*, which Plaintiff cites (Opp. at 11), the Ninth Circuit refused to enforce Barnes &

21    Noble's online terms because defendant attempted to bind users to the terms of service merely

22    through use of the website.  *Id.*  The court explained that if there "were . . . any evidence in the

23    record that [the plaintiff] . . . was required to affirmatively acknowledge the Terms of Use before

24    completing his online purchase, the outcome of this case might be different."  *Id.*

25    _____

26         [1] Similarly meritless is Plaintiff's claim that Mr. Brauchli manipulated the "location of the alleged hyperlink [to the Terms and Conditions] to a point above a fabricated keyboard pop-up." (Opp. at 9.)  This accusation is baseless.  As shown in the screenshots attached to the Brauchli

27    Reply Declaration, the "Link Payment" screen would have included the hyperlink to the Terms both before and after the user activated the iPhone's keyboard.  (Brauchli Decl. ¶ 7c, Exh. A;

28    Brauchli Reply Decl. ¶ 6, Ex. 1.)

1   Uber's sign-up process is different.  The Ninth Circuit expressly distinguished Barnes &

2   Noble's "browsewrap agreement" from a sign-up process like Uber's.  The Court cited with

3   approval to *Fteja v. Facebook*, a case in which an online agreement was formed where "the user

4   [was] required to affirmatively acknowledge the agreement before proceeding with use of the

5   website."  *Id.*  In *Fteja*, consumers assented to a forum selection clause by clicking "Sign Up" in

6   response to a notice stating that "By clicking Sign Up, you are indicating that you have read and

7   agree to the Terms of Service."  841 F. Supp. 2d. at 835.

8   Just like in *Fteja*, Plaintiff here received clear notice that he was bound when he

9   "affirmatively acknowledge[d] the Terms of Use" in connection with his account registration.

10  *Nguyen*, 763 F.3d at 1176.  Unlike the browsewrap agreement at issue in *Nguyen*, the Uber App

11  requires creation of an account *before* services are provided, and the user must affirmatively click

12  "DONE" to create the account, all on the same screen informing the user that creating an account

13  indicates agreement to Uber's Terms.[2]  (*See* Brauchli Decl. ¶¶ 6,7, Exh. A.)

14  Indeed, two federal courts recently enforced Uber's rider arbitration agreement, finding

15  Uber riders were bound to terms presented in an online account registration process virtually

16  identical to the one at issue here.  *See Cullinane v. Uber Techs.*, *Inc.*, No. 14-14750-DPW, 2016

17  WL 3751652 (D. Mass. July 11, 2016); *Lainer v. Uber Techs.*, *Inc.*, No. 2:15-cv-09925-BRO-

18  MRW, ECF No. 25 (C.D. Cal. May 11, 2016).  In *Cullinane*, the court compelled individual

19  arbitration under Uber's Terms and Conditions, where plaintiff was "presented with a button or

20  link to view terms of use" when creating an Uber account from an iPhone and "[t]he language

21  surrounding the button leading to the Agreement [was] unambiguous in alerting the user that

22  creating an account will bind her to the Agreement."  *Id.* at *6-8.  Similarly, in *Lainer*, the court

23  ─────────────────

24  [2] Plaintiff cites *Be In, Inc. v. Google, Inc.*, but that case involved a pure browsewrap agreement like the one later found unenforceable in *Nguyen*.  The complaint alleged only that the defendants had agreed to the "CamUp" software's terms of service because the CamUp website's

25  home page included a hyperlink to those terms on the site.  No. 12-cv-03373-LHK, 2013 WL 5568706, at *8-9 (N.D. Cal. Oct. 9, 2013).  The court held that the complaint had "provide[d] no

26  grounds, beyond the mere existence of a link, for the Court to find that Defendants were put *on notice* that mere use of the website would be interpreted as agreement to the Terms of Service,"

27  and the Complaint's conclusory allegations were insufficient for the court to "infer valid contract formation."  *Id.* at *9.  Both the sparse record and the absence of an affirmative act of assent

28  render *Be In* inapposite; indeed, the court expressly distinguished *Fteja*.  *Id.* at *7 (citing *Fteja*, 841 F. Supp. 2d at 835, 838-40).

sf-3719990

1    found that the plaintiff assented to "a valid arbitration clause in [the] agreement between herself

2    and Uber" when she registered for an Uber rider account using her iPhone.  No. 2:15-cv-09925-

3    BRO-MRW, ECF No. 25, at pp. 2, 4.  Plaintiff's experience here was no different than that of the

4    plaintiffs in *Cullinane* or *Lainer*.

5            Moreover, these cases are consistent with the myriad cases in which courts enforced

6    agreements formed under circumstances virtually identical to those at issue here, where a

7    consumer is given an opportunity to review the terms and takes some affirmative action

8    indicating assent to those terms (by pressing a button).  (*See* Open. Br. at 12-13 (citing cases).)

9    Contrary to Plaintiff's suggestion (Opp. at 12, n.10), as discussed above, these agreements are

10   enforceable regardless of whether users actually read them or not.  *See e.g.*, *Garcia*, 78 F. Supp.

11   at 1137; *Marin Storage & Trucking, Inc.*, 89 Cal. App. 4th at 1049; *Sanchez*, 61 Cal. 4th at 915.

12           In short, Uber's agreement is not a browsewrap and is enforceable.

13   **III.   PLAINTIFF AGREED TO HAVE THE ARBITRATOR DECIDE THE
           THRESHOLD ISSUES OF ARBITRABILITY.**

14

15           Plaintiff next argues that by incorporating the AAA Commercial Arbitration Rules, the

16   parties did not "clearly and unmistakably" delegate the gateway issue of arbitrability to the

17   arbitrator.  (Opp. at 13-15.)  Plaintiff is wrong.  This case falls squarely within the overwhelming

18   weight of authority—including from the Ninth Circuit, seven other federal circuits, the California

19   appellate courts, and numerous cases in this District—requiring that the arbitrator decide

20   questions of arbitrability if the arbitration is to be conducted under AAA rules.  (Open. Br. at 9-

21   11.)

22           There is no dispute that the Arbitration Agreement provides for arbitration to be

23   "administered by the American Arbitration Association ("AAA") in accordance with the

24   Commercial Arbitration Rules and the Supplemental Procedures for Consumer Related Disputes."

25   (Llaguno Decl., Exh. A at § 6.)  Nor do the parties dispute that Rule R-7(a) of the AAA

26   Commercial Arbitration Rules provides that the arbitrator has "the power to rule on his or her

27   own jurisdiction, including any objections with respect to the existence, scope, or validity of the

28   arbitration agreement or to the arbitrability of any claim."  AAA Commercial Arbitration Rules

1    and Mediation Procedures at R-7(a).  Accordingly, there is clear and unmistakable evidence that

2    arbitrability issues are to be decided by the arbitrator.

3        Relying on the decision in *Tompkins v. 23andMe, Inc.*, Plaintiff argues that the multitude

4    of cases cited in Uber's Opening Brief do not apply because in *Oracle America, Inc. v. Myriad*

5    *Group A.G.*, the Ninth Circuit reserved judgment "as to the effect of incorporating arbitration

6    rules into consumer contracts."  (Opp. at 14 (citing *Oracle*, 724 F.3d 1069, 1075 n.2 (9th Cir.

7    2013).)  Plaintiff then proclaims that the incorporation rule applies only to "sophisticated parties."

8    (Opp. at 15.)

9        But Plaintiff's "reliance on *Tompkins* is outdated," given the Ninth Circuit's subsequent

10   decision in *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015).  *Khraibut v. Chahal*, No. C15-

11   04463 CRB, 2016 U.S. Dist. LEXIS 35514, at *14 (N.D. Cal. Mar. 18, 2016) (rejecting plaintiff's

12   "sophisticated parties" limitation and enforcing delegation clause in employment agreement).  In

13   *Brennan*, the Ninth Circuit held that "incorporation of the AAA rules constitutes clear and

14   unmistakable evidence that contracting parties agreed to arbitrate arbitrability."  796 F.3d at 1130.

15   Importantly, though the court declined to specifically extend its holding to consumer contracts, it

16   stressed that its holding "should not be interpreted to require that the contracting parties be

17   sophisticated or that the contract be 'commercial' before a court may conclude that incorporation

18   of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent."  *Id.*

19   Indeed, as the court noted, the "vast majority" of circuits that have applied the incorporation rule

20   do so "without explicitly limiting that holding to sophisticated parties."  *Id.* at 1130-31.

21       Courts in this District have followed the reasoning in *Brennan*.  As noted in *Zenelaj v.*

22   *Handybook Inc.*, the *Tompkins* decision is "at odds with the prevailing trend of case law,"

23   including in this District, "which has consistently found effective delegation of arbitrability

24   regardless of the sophistication of the parties."  82 F. Supp. 3d 968, 973-74 (N.D. Cal. 2015)

25   (collecting cases).

26       Moreover, the Court cannot require a "sophisticated parties" condition.  To impose a

27   "sophistication" test on the enforceability of a delegation clause would establish a different rule

28   for arbitration agreements than other contracts.  *Cf. Wolschlager v. Fidelity Nat'l Title Ins. Co.*,

1   111 Cal. App. 4th 784, 790-91 (2003) (enforcing arbitration clause in external document

2   referenced in contract between home purchaser and title insurance company based on generally

3   applicable incorporation by reference doctrine).  The FAA, however, prohibits such "defenses

4   that apply only to arbitration."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).[3]

5          In any event, *Brennan* controls here.  There is no question that the parties delegated

6   arbitrability questions to the arbitrator.  Accordingly, this Court should order Plaintiff to arbitrate

7   any threshold issues of arbitrability, including Plaintiff's arguments that the arbitration provision

8   is unconscionable.  *See Brennan*, 796 F.3d at 1130-31 (pursuant to delegation clause, the

9   arbitrator, not the court, decides whether the arbitration clause is unconscionable).

10  **IV.    EVEN IF THE COURT DETERMINES ARBITRABILITY, THE ARBITRATION**
       **AGREEMENT CLEARLY COVERS PLAINTIFF'S CLAIMS AND IS NOT**
11     **UNCONSCIONABLE.**

12          **A.    Plaintiff's Claims Are Covered by the Arbitration Agreement.**

13          Even if the Court determines arbitrability, the Court should compel arbitration because

14  Plaintiff's claims are unquestionably covered by the Arbitration Agreement.  (Open. Br. at 14-

15  16.)  The Arbitration Agreement broadly defines the scope of arbitrable disputes to include "**any**

16  **dispute, claim or controversy arising out of or relating to** these Terms or the breach,

17  termination, enforcement, interpretation or validity thereof or the use of the Services . . ."

18  (Llaguno Decl., Exh. A at § 6 [emphasis added].)

19          Plaintiff does not seriously contest that his claims are covered by the Arbitration

20  Agreement.  He does not dispute that all of his claims are based on allegations that he was

21  incorrectly charged cancellation fees for services he requested through the Uber App.  (ECF No. 1

22  ¶¶ 24-50.)  He does not dispute that these charges could not have occurred but for Plaintiff's use

23  of Uber's services.  (*See* Llaguno Decl., Exh. A at § 2.)  And he admits that Uber's cancellation

24  fee policy is contained within Uber's Terms and Conditions—indeed, he *quotes* the policy in his

25

26          [3] Plaintiff argues, without any authority, that the arbitration clause in the parties'
    agreement "actually is not an arbitration clause at all," but merely a class action waiver clause,
27  which the "Ninth Circuit has repeatedly refused to enforce."  (Opp. at 14 n.13.)  To the contrary,
    class action arbitration waivers are plainly enforceable under the United States Supreme Court's
28  decision in *Concepcion*.  *See* 563 U.S. at 344.

sf-3719990

1    Opposition.  (Llaguno Decl., Exh. A at § 4; Opp. at 25.)  Plaintiff's challenges to the cancellation

2    policy in the Terms clearly constitute a "dispute, claim or controversy arising out of or related to

3    these Terms . . . or the use of the Services."  (Llaguno Decl., Exh. A at § 6.)

**B.    Plaintiff Cannot Show That the Arbitration Agreement Is Unconscionable.**

**1.    The Arbitration Agreement Is Neither Oppressive Nor Surprising.**

6          Plaintiff's principal argument on procedural unconscionability is that the Arbitration

7    Agreement was offered on a "take-it-or-leave it" basis.  (Opp. at 16-17.)  But as the Supreme

8    Court recognized in *Concepcion*, "the times in which consumer contracts were anything other

9    than adhesive are long past."  563 U.S. at 346-47.  "When, as here, there is no other indication of

10   oppression or surprise, the degree of procedural unconscionability of an adhesion agreement is

11   low, and the agreement will be enforceable unless the degree of substantive unconscionability is

12   high.'"  *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1470 (2013) (internal citation

13   omitted.)  Here, there was no oppression or surprise.

14         ***No Oppression.***  Contracts of adhesion may be problematic when one party has no

15   meaningful ability to refuse the contract, such as "[i]n the employment context, [where] the

16   economic pressure exerted by employers on all but the most sought-after employees may be

17   particularly acute, . . . and few employees are in a position to refuse a job because of an

18   arbitration requirement." *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 245 (2014) (citation

19   omitted).  Here, although Uber provides a desirable service to riders, Uber is not an essential

20   good.  *See McCabe v. Dell, Inc.*, No. CV 06-7811-RGK, 2007 WL 1434972, at *3 (C.D. Cal. Apr.

21   12, 2007) (recognizing a difference between employment agreements and agreements concerning

22   a "consumer non-essential good").  If Plaintiff did not like the Terms and Conditions, he was free

23   to use an alternative form of transportation.  *See Belton v. Comcast Cable Holdings, LLC*, 151

24   Cal. App. 4th 1224, 1245 (2007) ("The availability of alternative sources from which to obtain

25   the desired service defeats any claim of oppression, because the consumer has a meaningful

26   choice.")

27         Relying on outdated and overruled case law, Plaintiff next argues the Arbitration

28   Agreement is oppressive because of the provision that allows Uber to unilaterally modify the

1  Terms and Conditions.  (Opp. at 17.)  But the Ninth Circuit recently rejected that argument in the

2  *Tompkins v. 23andMe, Inc.* appeal, holding that a unilateral modification provision in 23andMe's

3  terms of service was not unconscionable because "the implied covenant of good faith and fair

4  dealing prevents a party from exercising its rights under a unilateral modification clause in a way

5  that would make it unconscionable."  834 F.3d 1019, 1035 (9th Cir. 2016) (collecting cases).

6  Further, unlike the defendant's "actual and repeated modification" of the terms of service in the

7  *Merkin v. Vonage America Inc.* case that Plaintiff relies upon (which was subsequently reversed

8  by the Ninth Circuit), here Plaintiff does not even attempt to argue that Uber made any

9  modifications to the Arbitration Agreement at all, which alone defeats his claim.  *See Merkin v.*

10  *Vonage Am. Inc.*, No. 2:13-cv-08026-CAS(MRWx), 2014 U.S. Dist. LEXIS 14055, at *21 (C.D.

11  Cal. Feb. 3, 2014), *overruled by* No. 14-55397, 2016 U.S. App. LEXIS 3676 (9th Cir. Feb. 29,

12  2016); *Peng*, 219 Cal. App. 4th at 1472 (employment agreement that included unilateral

13  modification provision not unconscionable when no modification alleged).  Finally, users have

14  the option to opt out of changes to the Arbitration Agreement, which further undermines any

15  claim of unconscionability.  (Llaguno Decl., Exh. A at § 6.)

16       *No surprise.*  Again, Plaintiff relies on outdated case law to argue that the Arbitration

17  Agreement was "hidden in a prolix printed form."  (Opp. at 17-18.)  But as the California

18  Supreme Court made clear in *Sanchez*, Uber "was under no obligation to highlight the arbitration

19  clause of its contract, nor was it required to specifically call that clause to [Plaintiff's] attention."

20  61 Cal. 4th at 914 (noting that "[a]ny state law imposing such an obligation would be preempted

21  by the FAA"); *see also Uptown Drug Co. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1178,

22  1182 (N.D. Cal. 2013) (enforcing arbitration clause that appeared under the heading

23  "Miscellaneous" on pages 49 and 50 of 217).  Further, the Arbitration Agreement is written in

24  plain English and is conspicuously displayed under the bolded heading "**DISPUTE**

25  **RESOLUTION**"—not "hidden within a prolix printed form."  (Llaguno Decl., Exh. A at § 6);

26  *Jones v. Wells Fargo Bank*, 112 Cal. App. 4th 1527, 1539 (2003).

27           **2.**     **The Arbitration Agreement Is Not Substantively Unconscionable.**

28       Even if this Court finds the Arbitration Agreement to be procedurally unconscionable,

1   under California law, a contract must be both procedurally and substantively unconscionable in

2   order to be unenforceable.  "Substantive unconscionability centers on the terms of the agreement

3   and whether those terms are so one-sided as to shock the conscience."  *Ruhe v. Masimo Corp.*,

4   No. SACV 11–00734–CJC (JCGx), 2011 WL 4442790, *3 (C.D. Cal. Sept. 16, 2011) (internal

5   quotations and citations omitted).  California also uses a "sliding scale" so "the more

6   substantively oppressive the contract term, the less evidence of procedural unconscionability is

7   required to come to the conclusion that the term is unenforceable, and vice versa."  *Cisneros v.*

8   *Am. Gen. Fin. Servs., Inc.*, No. C11-02869 CRB, 2012 WL 3025913, at *4 (N.D. Cal. July 24,

9   2012) (citation omitted).  Here, the Arbitration Agreement's terms are not one-sided at all, much

10  less so one-sided that they shock the conscience.

11      The Arbitration Agreement provides significant safeguards to riders: 1) arbitration occurs

12  where the rider resides; 2) Uber pays all arbitration fees for claims under $75,000; 3) riders can

13  obtain attorneys' fees, whereas Uber waives them; and 4) for claims under $10,000, riders control

14  whether there is a hearing or instead arbitration is decided on the papers.  (Llaguno Decl., Exh. A

15  at § 6.)  Plaintiff does not say a word about any of these provisions favoring riders.  Nor does

16  Plaintiff mention the landmark U.S. Supreme Court case, *Concepcion*, which expressly warned

17  against applying state "unconscionability" law in a way that would "disproportionate[ly] impact"

18  arbitration clauses.  533 U.S. at 341-42.

19      Instead, Plaintiff cherry picks a few clauses *out of context* and claims that because those

20  clauses are supposedly not "bilateral" in all respects, the Arbitration Agreement is

21  unconscionable.  Contrary to Plaintiff's argument, contract law does not require perfectly

22  symmetrical rights on a provision-by-provision basis.  Rather, contracts by their nature involve

23  mutual exchanges of consideration, some benefitting one party, some benefitting the other.

24  *Beard v. Santander Consumer USA, Inc.*, No. 1:11-cv-11-815 LJO–BAM 2012, WL 1292576, at

25  *10 (E.D. Cal. Apr. 16, 2012) ("The absence of an exact parallel between the parties' obligations

26  under an arbitration agreement does not require the Court to find the agreement to be

27  unconscionable."); *see also Pope v. Sonatype, Inc.*, No. 5:15-CV-00956-RMW, 2015 WL

28  2174033, at *3 (N.D. Cal. May 8, 2015) ("The primary consideration is whether the agreement

1   contains a modicum of bilaterality.") (citations and internal quotation marks omitted).

2       As discussed above, the unilateral modification provision does not render the Arbitration

3   Agreement unconscionable, as Plaintiff again argues.[4]  (Opp. at 19-20.)  The same is true for the

4   standard limitation of liability provision in the Terms and Conditions (Opp. at 21-22), which

5   "have long been recognized as valid in California."  *Lewis v. YouTube, LLC*, 244 Cal. App. 4th

6   118, 125 (2015) (rejecting YouTube user's claim for damages on basis of limitation of liability

7   clause in YouTube's terms of service) (citation omitted).  Further, Plaintiff ignores the language

8   in the same provision that states: "The limitations and disclaimer in this section do not purport to

9   limit liability or alter your rights as a consumer that cannot be excluded under applicable law."

10  (Opp. at 21-22; Llaguno Decl., Exh. A at § 5.)  Thus, Plaintiff has not given up any right to

11  damages that "cannot be excluded under applicable law."

12      Plaintiff has not shown any substantive unconscionability with respect to the provision

13  that excludes from arbitration "injunctive or other equitable relief" claims to protect intellectual

14  property rights.  (Opp. at 20-21.)  Indeed, this case does not involve any claims over intellectual

15  property, so Plaintiff's objection is hypothetical.  As this District has recently held with respect to

16  a nearly identical provision: "Because there are no trade secret misappropriation claims in this

17  case, the court finds that this provision should not bar enforcement of the Arbitration

18  Agreement."  *Pope*, 2015 WL 2174033, at *5.

19      Further, Plaintiff again relies on outdated and in some instances overruled case law in

20  arguing that this provision is unconscionable because it "excludes from arbitration the very types

21  of claims that Uber is most likely to bring."  (Opp. at 20.)  The Ninth Circuit recently rejected that

22  precise argument in *Tompkins*, which is dispositive here.  Relying on the California Supreme

23  Court's decisions in *Sanchez* and *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237 (2016), the Ninth

24  Circuit held that an arbitration carve-out for intellectual property claims in 23andMe's terms of

---

26      [4] In support of this argument, Plaintiff cites only two post-*Concepcion* cases, neither of
27  which even discusses unconscionability, cites *Concepcion*, or applies California contract law.  *See In re Zappos.com, Inc. Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058 (D. Nev. 2012)
    (applying Nevada law); *Grosvenor v. Qwest Corp.*, 854 F. Supp. 2d 1021 (D. Colo. 2012)
28  (applying Colorado law).

1    service was not substantively unconscionable because (1) customers retained intellectual property

2    rights in "user-generated content" that, like 23andMe, they could enforce in court; and

3    (2) 23andMe had "valuable intellectual property rights" in its website and database and thus was

4    entitled to an extra "margin of safety" based on legitimate business needs.  *Tompkins*, 834 F.3d at

5    1033-34.

6         The same is true here.  Like the customers in *Tompkins*, Uber users retain intellectual

7    property rights in "user provided content," which they can enforce in court, just like Uber.

8    (Llaguno Decl., Exh. A at § 3 (User Provided Content).)  Further, Plaintiff does not dispute that

9    that Uber has valuable intellectual property rights in its technology, which entitles Uber to an

10   extra "margin of safety" based on legitimate business needs.

11        Plaintiff has not met his burden of proving the Arbitration Agreement is unconscionable.

12   *Pinnacle Museum Towers Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012).

13   The Arbitration Agreement affords numerous safeguards to riders.  None of Plaintiffs' proffered

14   authority—certainly none post-*Concepcion*—has rejected an agreement with as many consumer

15   safeguards as the one here. Moreover, under the binding authority of *Tompkins*, the Arbitration

16   Agreement is not substantively unconscionable.[5]

17   **V.    CONCLUSION**

18        The Court should order Plaintiff to individually arbitrate all of his claims against Uber and

19   dismiss, or in the alternative, stay, Plaintiff's claims pending the outcome of arbitration.

20

21

22

23

24

---

25   [5] Even if the Court were to find a particular clause or sub-clause unconscionable, the proper remedy would be to sever the clause, not to void the entire Arbitration Agreement.  *See*
26   *Marquez v. Brookdale Senior Living*, No. 13-cv-05320-RS, 2014 WL 1379645, at *5 (N.D. Cal. Apr. 4, 2014) ("Where a contract is both procedurally and substantively unconscionable the court must determine whether the unconscionable terms can be severed and the remaining agreement
27   enforced."); Cal. Civ. Code § 1670.5 (court may sever or "limit the application" of an unconscionable clause); *Davis v. Gazillion, Inc.*, No. C 10-743 RS, 2010 WL 2740002, at *2-3
28   (N.D. Cal. July 12, 2010) (severing unconscionable provisions).

1

Dated:  December 9, 2016

WILLIAM L. STERN
2                                           TIFFANY CHEUNG
CLAUDIA M. VETESI
3                                           LUCIA X. ROIBAL
MORRISON & FOERSTER LLP
4

By:   */s/ Tiffany Cheung*
5                                           TIFFANY CHEUNG

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28